BAUGHER *v.* BARRETT ET AL.

[No. 18,892. Filed October 11, 1957. Rehearing denied November 8, 1957. Transfer denied January 30, 1958.]

*Kizer & Neu* and *Marshall F. Kizer,* of Plymouth, for appellant.

*Stevens & Wampler* and *George Stevens,* of Plymouth, for appellees.

Bowen, J.—The questions presented by the appellant's assignments of error in the instant case involve a review of the trial court's interpretation and construction of an antenuptial agreement entered into between the appellant, Sarah Baugher, and John A. Baugher, deceased, the said Sarah being his surviving second childless widow, and the appellees are the executrices of his estate and his living children by a previous marriage.

John A. Baugher died testate and the appellant, Sarah Baugher, filed her election to take under the law rather than under the last will and testament of said decedent. The appellant filed her petitions in the court below in the estate of John A. Baugher, deceased, for the payment of widow's allowance and for the determination of heirs in such estate. Issues were formed on such petitions and the answer by the joint executrices and the other heirs alleging the provisions of a certain antenuptial agreement were a bar to any alleged interest of appellant as asserted in such petition, and asserting that the rights of the appellant were fixed and determined by such antenuptial contract, and such answers asked that it be determined that she have a life estate in the real estate as set out in said antenuptial contract, and that she have no further interest in the property of said decedent.

The cause was submitted to the court for trial and the court found and determined that the appellant was bound by the terms of such antenuptial contract which gave her a life estate in certain real estate, and that such life estate constituted her full interest in such

estate, and denied her the widow's statutory allowance, and held that the heirship of John A. Baugher was determined by the will of said decedent in which Sarah A. Baugher was given no interest, and that such estate is subject only to the life estate given to appellant under the terms of such antenuptial contract.

The appellant filed a motion for a new trial on the grounds that the decision of the court was contrary to law in the court's holding that the petitioner was not entitled to the statutory widow's allowance, and that she was not entitled to any interest in the estate of the decedent either as an heir or his surviving widow, and that the court erred in its interpretation and construction of the antenuptial agreement.

The motion for a new trial was overruled and this appeal followed.

It appears that at the time John A. Baugher was seventy-five years of age. He had been married twice before. His first wife, who had borne him several children, had died and his second marriage was of short duration and was terminated by divorce. He owned personal property and real estate, including the home in which he was living in the town of Tippecanoe, Indiana. The decedent married the appellant, Sarah Ruch, later Sarah Baugher, on the 5th day of June, 1945, and after the parties were married they lived together until the decedent's death on December 3, 1953. Ten days before this marriage, the said parties, Sarah Ruch, later Sarah Baugher, and John A. Baugher, entered into an antenuptial agreement which contained *inter alia* the following provisions:

> "Whereas, a marriage is intended to be sole*m*ized between the parties hereto, and in view of the fact that after their marriage, in the absence of any agreement to the contrary, their legal relations and powers as to property may be other than in

their present domicile by reason of some change therein.

"Now, therefore, each of the parties hereto declares it to be their respective desire that, during their life time, each of them shall be and completely independent of the other so far as the enjoyment and disposal of property is concerned with one exception hereinafter contained, whether owned by either of them at the commencement of the marriage or accruing to them during their married life. Each hereby agrees with the other that so far as it is legally possible all property belonging to either of them at marriage, or coming to them subsequently during their married life, shall be enjoyed by him or her to whom it comes, and shall be subject to his or her disposition as his or separate property in the same manner as if the proposed marriage had never taken place.

"Said exception is as follows: Whereas, the said John A. Baugher is now the owner in fee simple of a tract of land situated about 30 rod West of State Road number 331 and due West of the Moriarty Grocery Store in Tippecanoe, Indiana, containing over three acres of land and more particularly described as follows: (describing the real estate) and the said John A. Baugher hereby grants and conveys unto the said Sarah Ruch a life estate in said real estate in the event the said John A. Baugher predeceases the said Sarah Ruch."

During his lifetime the said decedent made a last will and testament, which, by its terms, provided for the payment of his debts and bequeathed to his daughters the sum of $743.10 each to equalize said daughters for the expenses paid for his son William. By the terms of his will the residue of the estate was divided into three shares, one share each to his living daughters, the appellees herein, and the third share to his two granddaughters, children of his deceased son William.

The core of appellant's case is found in her contentions that the antenuptial agreement makes provision

for the rights of the parties over their separate property during their lifetimes and does not affect the right of either of the parties to inherit from the other or to receive the provision for each other as provided by law, and does not constitute a waiver on the part of the appellant to elect to take under the law as against the will of her deceased husband, and the appellant further claims that the absence in the agreement of any mention of the widow's statutory allowance or estate of either party, or waiver of right to take under the law as against the will of either party, and rights of the parties upon the death of either, are strong indications that the parties did not intend to contract as to their rights after the death of either party. We must examine these contentions in the light of the general law on the subject of antenuptial contracts in this state and the wording of the agreement in question.

The law is generally well settled that antenuptial contracts entered into between an adult husband and adult wife in contemplation of marriage are favored by the law in that they tend to promote domestic happiness and adjust property questions which might otherwise become the source of much litigation, and, as often pointed out, the marriage itself is the consideration for such agreement which perhaps may be the most valuable and highly respected consideration of the law. No formality is required, and such agreements are given a liberal rather than a strict construction, and a construction will be given in each case giving effect, if possible, to the intention of the parties. *Moore, Adm.* v. *Harrison, Adm.* (1901), 26 Ind. App. 408, 59 N. E. 1077; *Mallow* v. *Eastes* (1913), 179 Ind. 267, 100 N. E. 836; *Roush* v. *Hullinger* (1949), 119 Ind. App. 342, 86 N. E. 2d 714; *McNutt* v. *McNutt* (1889), 116 Ind. 545, 19 N. E. 115,

2 L. R. A. 372; Bishop on the Law of Married Women, Vol. 1, §427, p. 297; 26 Am. Jur., Husband and Wife, §277, p. 884.

There are certain general rules of construction with reference to the determination of the legal effect of the wording of an antenuptial agreement. The ■ authorities seem to agree that in construing such agreements that they are to be construed generally according to principles applicable to the construction of contracts generally, but since such agreements are favored by public policy, they shall be construed liberally to effect the intention of the parties, and in determining such intention, consideration should be had of the language of the entire instrument, together with its general scope and purpose, the conditions surrounding the parties at the time the agreement was made, the legal rights of the parties as they existed before, and would have existed after the marriage if no agreement had been made. 26 Am. Jur., Husband and Wife, §280, pp. 886-887. Each case must be determined upon the basis of the facts in the particular case and the language used in such agreements.

This court, in *Higgins* v. *St. Joseph Loan & Trust Co.* (1934), 98 Ind. App. 674, 186 N. E. 910, in discussing a similar contention to the one advanced by the appellant in the instant case, in a situation involving a postnuptial separation agreement, stated:

"Appellant contends that 'a widow's rights in property of a deceased husband are not to be deemed relinquished by any postnuptial agreement, *unless such purpose is expressed or* unquestionably inferable from the agreement (our italics); that there is nothing in the separation agreement to the effect that said widow was relinquishing any right as against the estate of said husband *in the event of his death prior to hers* (and therefore) those rights were preserved unto her—' (Our italics.)

"A determination of the question presented involves a construction of the contract.

"We must presume that when appellant executed the contract, she knew what her legal rights were; that she knew she was entitled to a widow's allowance in addition to her rights of inheritance. That a wife can effectively relinquish her rights of inheritance in her husband's property has been definitely settled by our Supreme Court in *Leach* v. *Rains et al.* (1897), 149 Ind. 152, 48 N. E. 858. Although we have not found any decision by the courts of last resort of this state, that a 'widow's allowance' may be effectively relinquished by a postnuptial agreement there is ample authority by the courts of last resort in other states for so holding. See *In re Noah* (1887), 73 Cal. 583, 15 Pac. 287; *Estate of Yoell* (1913), 164 Cal. 540, 129 Pac. 999; *Hollenbeck* v. *Pixley* (1858), 3 Gray (Mass.) 521; *In re Roth* (1899), 6 Ohio N. P. 498. "The usual rules governing the construction of contracts apply to the contract of marriage settlement. 30 C. J. 646. The purpose of all rules of construction is to arrive at the intention of the parties. If the provisions of the contract are not ambiguous, they should be construed in accordance with the language used, to effectuate the intention of the parties, and the words must be given their ordinary meaning. Appellant agreed not only 'to waive any rights that she may have to any property now owned and possessed by . . . . . (decedent) . . . . . or that may hereafter be owned and possessed by . . . . . (him) . . . . .' but appellant also agreed 'to forever relieve and release . . . . . (decedent) . . . . . from providing for any support and maintenance of . . . . . (herself) . . . . .'

"We think this contract is clear and unambiguous, insofar as the matter of statutory widow's allowance is concerned. Appellant's agreement to 'waive any rights she may have to any property now owned and possessed by . . . . . (decedent) . . . . . or that may hereafter be owned and possessed by . . . . . (decedent) . . . . .' might not be specific enough under decisions of the courts of last resort in other states."

Appellants' contentions in the instant case seem to be grounded upon the first part of the antenuptial

agreement which was limited by the words "during their lifetime." However, a separate and distinct part of such agreement contained the provision that "Each hereby agrees with the other that so far as it is legally possible all property belonging to either of them at marriage, or coming to them subsequently during their married life, shall be enjoyed by him or her to whom it comes, and shall be subject to his or her disposition as his or her separate property in the same manner *as if the proposed marriage had never taken place."* (Our italics.) Certainly, the intention of the parties is clear and unequuovical, and no more definite language could have been used granting unlimited power of disposition of their separate property than the words *"as if the marriage had never taken place."* The decedent disposed of his property by will, which the agreement clearly and unequivocally gave him the right to do, and the lower court did not err in holding that appellant was bound by the provisions of the antenuptial contract.

We recognize that there is reputable authority in other states by which the language used in the agreement in the instant case might be held to be insufficient to bar the right of either to inherit from the other. See *Estate of Schwartz* (1947), 79 Cal. App. 2d 301, 179 P. 2d 863; *Kistler* v. *Ernst* (1899), 60 Kan. 243, 56 Pac. 18. However, under the holding in the *Higgins* case, *supra,* and *Buffington* v. *Buffington, Executor* (1898), 151 Ind. 200, 51 N. E. 328, the courts of this state are committed to a more liberal rule of construction as to the effect of language used in antenuptial contracts. Furthermore, the intent of the parties, as shown by their agreement, was clear and unequivocal with no limit on the means and manner of disposition, whether by will or otherwise, upon a basis that the

separate rights of each were the same as if the marriage had not occurred. Certainly, if the marriage had not occurred, the appellant would have no rights as to the matters presented by her petitions, and also, her husband and signatory to such agreement exercised the power of disposition by making his will. A more difficult question would be presented had he not made disposition of his property by will. But the intention of the parties was made manifest by the agreement and disposition made by the husband in accordance with such agreement.

The appellant makes the further contention in her brief that the lower court's decision is erroneous for the alleged reason that the provision in the antenuptial contract, wherein she was given a life estate in the home property, and which the lower court held her to be entitled to under the provisions of the antenuptial contract, was not effective because it was an attempt to make a testamentary disposition, and that the same was not witnessed as required by law. The appellant having failed to raise this question in the court below, or complain of the court's action in awarding this property to her in her motion for a new trial, is not in a position to raise the question in this court. Furthermore, under the lower court's ruling she receives such life estate by virtue of such antenuptial contract.

It should be noted in connection with our decision that the decedent died and his will was probated prior to the time the new Probate Code was adopted in 1954 (see §2502, ch. 112 of the Acts of 1953, and of §8-218, Burns' 1953 Replacement), and this agreement and the rights of the parties have been determined in accordance with the law then in force, and we have not considered any possible effect of the new Probate Code on antenuptial contracts.

For the reasons given herein the judgment of the lower court is affirmed.

NOTE.—Reported in 145 N. E. 2d 297.