**Helen M. BEATTY, Appellant (Defendant Below),**

v.

**Glen S. BEATTY, Appellee (Plaintiff Below).**

**No. 76A04–8906–CV–00229.**

Court of Appeals of Indiana, Fourth District.

June 14, 1990.

Robert S. Walters, Barrett and McNagny, Fort Wayne, for appellant.

Kim E. Shoup, Shoup and Shoup, Angola, for appellee.

MILLER, Judge.

Helen Beatty's estate (Estate) appeals the trial court's order awarding Glen Beatty, Helen's surviving husband, the surviving spouse allowance of $8,500 set forth in IND.CODE § 29–1–4–1.[1] Glen and Helen Beatty were married on September 29, 1967. On April 2, 1968 they executed a written instrument entitled "Antenuptial Agreement". The agreement recited that it was a written memorialization of an earlier agreement they had mutually entered into prior to their marriage. The agreement provided in relevant part:

> It is the intention of the parties that each waives his or her respective right to share or elect to participate in the estate of the other, to any and all support, maintenance or other rights flowing from the marriage, and to every other interest of whatsoever kind or nature to which he or she might subsequently become entitled in and to the estate of the other.

(R. 17). Helen died in early 1988. After Helen's death, Glen filed a claim against Helen's estate for the surviving spouse allowance of $8,500 set forth in I.C. § 29–1–4–1. The Estate denied Glen's claim on the basis of the antenuptial agreement. After Glen's claim was denied, the matter was transferred to the trial docket of the Steuben Circuit Court. The parties argued the matter before a special judge on the Estate's motion for summary judgment. The Estate argued Glen waived his right to claim the survivor's allowance when he entered into the antenuptial agree-

ment. Glen argued he could not have waived this right because at the time he and Helen entered into the agreement, this "right" was not in existence.[2] After the hearing, the special judge stated that, in his opinion, Glen did not waive his right to claim the survivor's allowance when he entered into the antenuptial agreement. In reaching this determination, the court reasoned:

> [T]o constitute a waiver, the right of privilege claimed to have been waived must generally have been in existence at the time of the purported waiver as a person cannot waive a right before he is in a position to assert it and the right must exist before he can waive it.

(R. 72).[3] The court entered final judgment in favor of Glen and against the Estate in the amount of $8,500 on May 2, 1989. The Estate appeals this decision claiming the trial court erred when it determined Glen did not waive his right to claim the survivor's allowance when he entered into the Antenuptial Agreement.

## FACTS

The Antenuptial Agreement which Glen and Helen memorialized in writing on April 2, 1968 provides:

> Prior to the marriage on the 14th day of March, 1968,[4] the parties hereunto entered into an Antenuptial Agreement which they now desire to set forth in the following memorandum of agreement.
>
> Each having fully disclosed the extent and nature of his or her estate to the other, and each being fully advised of the inchoate rights with which he or she was

---

1. I.C. § 29–1–4–1 provides in part:
   The surviving spouse of a decedent who was domiciled in Indiana at his death is entitled from the estate to an allowance of eight thousand five hundred dollars ($8,500) in personal property.

2. At the time the agreement was executed, Indiana law allowed a surviving widow an allowance of $2,000. However, this statute was repealed effective January 1, 1976 in favor of a statute providing a survivor's allowance of $8,500, to the surviving spouse, regardless of sex. *See* Ind.Code § 29–1–4–2 repealed by Acts 1975, P.L.288, § 51; *See also Estate of Parson* (1976), 168 Ind.App. 580, 344 N.E.2d 317, n. 1.

3. In reaching its decision, the court also relied on the fact that Helen executed a Last Will and

Testament in June of 1978 and two codicils in February of 1984 and January of 1987 and these instruments made no mention of the survivor's allowance described by I.C. § 29–1–4–1. The court's reasoning in this regard was that since Helen's Will—which was executed after I.C. § 29–1–4–1 was enacted—made no mention of I.C. § 29–1–4–1, Helen must have been satisfied with Glen receiving the survivor allowance.

4. Although this agreement states Glen and Helen were married on March 14, 1968, the parties apparently concede Glen and Helen were married on September 29, 1967. Either way, the agreement was memorialized in writing after their marriage.

to become endowed upon consummation of the marriage, the parties did thereupon agree as follows:

> Upon the death of either of the parties hereunto, or in the event of a prior dissolution of the marriage then upon such dissolution, neither party shall have any claim, right, title or interest in or to the estate of the other. It is the intention of the parties that each waives his or her respective right to share or elect to participate in the estate of the other, to any and all support, maintenance or other rights flowing from the marriage, and to every other interest of whatsoever kind or nature to which he or she might subsequently become entitled in and to the estate of the other.

Each of us has read and understood the terms of the foregoing instrument which we believe accurately sets forth the intentions embodied in our previous agreement. Neither of us is acting under any compulsion or restraint but is motivated by a good faith desire to maintain our independent estates for the sole enjoyment of our respective descendants.

Executed this 2nd day of April, 1968, at Fort Wayne, Indiana.

Sig.: Glen S. Beatty

Sig.: Helen M. Beatty

At the request of the foregoing parties, we, the undersigned, have subscribed our names hereunto as witnesses on the date last above appearing. Each of the parties appeared to us to be acting of his or her own volition, free from any restraint or compulsion whatsoever and further appeared to fully understand the nature and extent of the rights and interests hereby waived.

Sig.: Witness's signature

Sig.: Witness's signature

(R. 17–18).

## DECISION

By challenging the trial court's ruling, the Estate is appealing from a negative judgment. In such cases, we neither reweigh the evidence nor assess the credibility of the witnesses. We will reverse only if the evidence viewed most favorably to the trial court leads incontrovertibly to a conclusion contrary to the one reached below. *Matter of Estate of Edington* (1986), Ind.App., 489 N.E.2d 612; *Bohnke v. Estate of Bohnke* (1983), Ind.App., 454 N.E.2d 446, *trans. denied.*

On appeal, the Estate argues Glen waived his right to claim the survivor's allowance when he entered into the Antenuptial Agreement because the agreement encompasses a waiver of all claims and interests against the Estate deriving in any manner from the marriage relationship. Glen claims he could not have waived this right because he was not aware of the right when he entered into the agreement.

In *Bohnke, supra,* this court noted the survivor's allowance described by I.C. § 29–1–4–1 is an "expectancy" within the meaning of IND.CODE § 29–1–2–13 and may be waived by an antenuptial agreement.[5] Thus, the question before this court is whether Glen waived his right to claim the survivor's allowance when he entered into the Antenuptial Agreement even though, at the time, I.C. § 29–1–4–1 was not yet in existence and its predecessor, I.C. § 29–1–4–2 described only a widow's allowance in a lesser dollar amount.

Before we discuss the issue we observe there is some confusion as to whether the written agreement is an "antenuptial" or a "post-nuptial" agreement. The Estate argues it is an antenuptial agreement because the language of the agreement provides:

> *Prior to the marriage* ... the parties hereunto entered into an Antenuptial Agreement which they now desire to set forth in the following memorandum of agreement.
>
> .\* \* \* \* \* \*

party waiving such share or expectancy. The promise of marriage, in the absence of fraud, shall be a sufficient consideration in the case of an agreement made before marriage.

---

**5.** I.C. § 29–1–2–13 provides in relevant part: The intestate share or other expectancy which the spouse or any other heir may be entitled to may be waived at any time by a written contract, agreement or waiver signed by the

Each of us has read and understood the terms of the foregoing instrument which we believe accurately sets forth the intentions *embodied in our previous agreement.*

(R. 17). (emphasis added).

On the other hand, Glen refers to the agreement as a post-nuptial agreement—apparently because the trial court referred to the agreement as such in its ruling. Since the agreement was memorialized in writing after the parties' marriage, the trial court declared the instrument to be a "post-nuptial" agreement. However, it is clear from the language of the instrument the parties entered into the agreement prior to their marriage. Additionally, we observe Glen does not deny that Helen and he entered into this agreement prior to their marriage. The fact that they memorialized their agreement in writing after their marriage does not render the antenuptial agreement a post-nuptial agreement.

The requirement in I.C. § 29–1–2–13 that waiver of an expectancy be in writing seems to have been inserted into that section to comply with the Statute of Frauds.[6] In *Koontz v. Koontz* (1927), 86 Ind.App. 206, 156 N.E. 524, the court held that a contract made before marriage will be enforced, despite the writing requirement of the Statute of Frauds, if it is reduced to writing after marriage in accordance with the parties' previous agreement. *Id.*

More recently, in *Estate of Weber v. Weber* (1960), 170 Ohio St. 567, 167 N.E.2d 98, the Supreme Court of Ohio examined whether the post-marriage reduction to writing of an agreement made before marriage, incorporating and confirming the terms of the parties' premarital agreement, was enforceable. The court, after examining cases from other states which have upheld the validity of antenuptial agreements reduced to writing after marriage, agreed with the *Koontz* court *supra* and held the reduction to writing of an oral contract made prior to marriage is enforceable as an antenuptial agreement. The *Weber* court also held that the written agreement must expressly refer to the antenuptial agreement and affirmatively show that it is a memorandum of the oral antenuptial agreement. *See also Lee v. Central Nat'l Bank & Trust Co.* (1974), 56 Ill.2d 394, 308 N.E.2d 605.

From the language of the agreement quoted above, it is clear that the parties intended their writing to be a written memorialization of an agreement entered before marriage. We hold, therefore, that the parties' agreement is an Antenuptial Agreement.

The standard for reviewing antenuptial agreements was set forth in *Russell v. Walz* (1984), Ind.App., 458 N.E.2d 1172, where this court stated:

Antenuptial agreements are legal contracts which attempt to regulate the interest which each party to a marriage shall take in the property of the other during the marriage and after its termination by death or other means. *McNutt v. McNutt* (1888), 116 Ind. 545, 551–52, 19 N.E. 115; 41 Am.Jur.2d "Husband & Wife" Section 283, Sections 289–91. Antenuptial agreements are favored by the courts as beneficial to public policy and will be liberally construed to effect, insofar as possible, the intention of the parties. *Baugher v. Barrett* (1957), 128 Ind.App. 233, 238–39, 145 N.E.2d 297, *Moore, Adm. v. Harrison, Adm.* (1901), 26 Ind.App. 408, 59 N.E. 1077. *See also* 41 Am.Jur.2d "Husband & Wife" Section 288. In determining the intention of the parties, "consideration should be had of the language of the entire instrument, together with its general scope and purpose, the conditions surrounding the parties at the time the agreement was made, the legal rights of the parties as they

---

6. Ind.Code § 32–2–1–1 states in pertinent part:
   Sec. 1. No action shall be brought in the following cases: ...
   Third. To charge any person upon any agreement or promise made in consideration of marriage ... Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, exception however, leases not exceeding the term of three years.

existed before, and would have existed after the marriage if no agreement had been made.... Each case must be determined upon the basis of the facts in the particular case and the language used in such agreements." *Baugher, supra,* 128 Ind.App. at 239, 145 N.E.2d 297. Although, as a contract, an antenuptial agreement must be based upon consideration, marriage itself is sufficient consideration. *McNutt v. McNutt* (1888), 116 Ind. 545, 550–53, 19 N.E. 115; *Baugher, supra,* 128 Ind.App. at 238, 145 N.E.2d 297. *See also* 41 Am.Jur.2d "Husband & Wife" Section 285; I.C. § 29–1–2–13; I.C. § 29–1–3–6. In negotiating an antenuptial contract, however, a man and woman do not stand at arms' length. Because their relation is one "of special trust and confidence toward each other," it demands "the utmost good faith" from both in executing and performing under the agreement. *Kratli v. Booth* (1934), 99 Ind.App. 178, 182, 191 N.E. 180; 41 Am.Jur.2d "Husband & Wife" Section 288. Valid antenuptial agreements are enforceable to raise claims or to bar claims waived by the agreement. 2A G. Henry, *The Probate Law and Practice of the State of Indiana* "Distribution" Section 24 (7th ed. by J. Grimes, 1979).

*Id.* at 1179, 1180.

As noted in *Russell,* antenuptial agreements are favored by the law and will be liberally construed to effect, so far as is possible, the parties' intentions. *See also In Re Marriage of Boren* (1985), Ind., 475 N.E.2d 690; *Bohnke, supra; McClain's Estate v. McClain* (1962), 133 Ind.App. 645, 183 N.E.2d 842. In the case before us, Glen and Helen's intentions are clearly set forth in their agreement:

> It is the intention of the parties that each waives his or her respective right to share or elect to participate in the estate of the other, to any and all support, maintenance or other rights flowing from the marriage, and to every other interest of whatsoever kind or nature to which he or she might subsequently become entitled in and to the estate of the other.

(R. 17). It is significant to note the parties chose to waive all rights "to share or elect to participate in the estate of the other" and "every other interest of whatsoever kind or nature to which he or she might subsequently become entitled in and to the estate of the other." We believe this language is broad enough to encompass a waiver of all rights deriving in any manner from the marriage relationship including Glen's right to the survivor's allowance which arose after the agreement was executed. Although Glen was not "aware" of the survivor's allowance, because I.C. § 29–1–4–1 was not in existence when he and Helen entered into the agreement, Glen was aware that he was waiving all rights "to share or elect to participate" in Helen's estate. (R. 17) He was also aware he was waiving "every other interest of whatsoever kind or nature to which he ... might subsequently become entitled" to in Helen's estate. (R. 17) It is clear from the agreement that Helen and Glen intended to exclude their individual estates from the normal operation of the relevant provisions of the probate code which would be in effect at the death of either party, and that they did so knowing the applicable probate provisions could change. Additionally, we observe that after the statement of the parties' intent the agreement provides:

> Neither of us is acting under any compulsion or restraint but is motivated by a good faith desire to maintain our independent estates for the sole enjoyment of our respective descendants.

(R. 17). From this language, it is clear Helen and Glen intended to waive all rights to share in the estate of the other in order to preserve their independent estates for the sole enjoyment of their respective children. Applying the rules of construction set forth in *Russell, supra,* we hold Glen waived his right to claim the survivor's allowance when he entered into the antenuptial agreement.

However, in support of his position that he is entitled to the survivor's allowance, Glen relies on the following language from *Higgins v. St. Joseph Loan & Trust Co. of South Bend* (1933), 98 Ind.App. 674, 186 N.E. 910, where this court stated:

The weight of authority authorizes a consideration of the fact as to whether the widow was living with her husband at the time of his death—or was voluntarily living apart and independent of him—in construing postnuptial and antenuptial contracts. In cases where they were living together as husband and wife at the time of the husband's death, the right of widow's allowance is not relinquished, unless it is specifically included or unquestionably implied; in cases where she had voluntarily been living separate and independent of her husband at the time of his death, the right of statutory widow's allowance may be relinquished by more general provisions.

*Id.* at 679, 186 N.E. at 912. Glen argues since he was living with Helen at the time of her death and the agreement does not specifically exclude the operation of I.C. § 29-1-4-1, he is entitled to the survivor's allowance.

First, we observe the agreement could not have specifically mentioned I.C. § 29-1-4-1 since it was not yet in existence. Second, the language quoted above is merely dicta. The actual holding of *Higgins* was that a wife's agreement to "waive any rights she may have to any property now owned and possessed by (decedent), or that may hereafter be owned and possessed by (decedent)" was specific enough to waive the wife's right to claim the survivor's allowance after her husband's death. Since the language quoted above was not necessary for the court's holding, we consider it dicta and decline to apply it.

Finally, we observe that agreements fixing the property rights of each party upon termination of the marriage by death or by other means must be honored and enforced as written. A court should not substitute its judgment for that of the parties and re-write the contract. As our supreme court stated in *McNutt v. McNutt* (1888), 116 Ind. 545, 19 N.E. 115:

'Our judgment is that where the prospective wife is the owner of land in her own right, and there is no fraud, and nothing making the contract unconscionable, the courts will not strike it down. Here there was no fraud. The parties were of mature years. The subject had been long under consideration. There was deliberation, not haste. There is nothing unconscionable in the contract. It was no more than equitable that the prospective husband should, at the time he made the contract, provide that his estate should go to his children by a former wife. It is, indeed, difficult to find any principle upon which courts can set aside contracts made in good faith, with due deliberation, and by persons of mature age, even though that contract be one between a man and a woman contemplating marriage.

\* \* \* \* \* \*

'The truth is, it is exceedingly difficult to imagine why, in any case where there is no fraud, courts should displace the judgment of contracting parties and substitute their own. No persons in the world can so well and so justly judge as the contracting parties themselves, and it is only in the strongest and clearest cases that courts should disregard their judgment, and never where there is neither positive wrong nor a fraud.'

*Id.*, at 549-550, 19 N.E. at 117, cited with approval in *In Re Marriage of Boren, supra.* In the case before us, we believe the trial court substituted its judgment for that of the parties when it ruled that, in its opinion, Glen did not waive the survivor's allowance when he entered into the antenuptial agreement. The language of the agreement is clear and unambiguous and evidences Glen and Helen's intent to waive all rights and interests in the estate of the other including future rights, in order to preserve their "independent estates for the sole enjoyment of our respective descendents." (R. 17). Accordingly, the trial court's judgment is reversed.

CONOVER and RATLIFF, JJ., concur.