Elizabeth A. SMITH, next best friend of Lucas Christopher Smith, Appellants–Plaintiffs,

v.

AMLI REALTY CO., d/b/a The Sycamore Apartments, Appellee–Defendant.

No. 41A04–9209–CV–318.

Court of Appeals of Indiana, Fourth District.

May 27, 1993.

Marvin E. Coffey and Ted D. Biggs, Indianapolis, for appellants-plaintiffs.

Thomas R. Schultz, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee-defendant.

CONOVER, Judge.

Plaintiff–Appellant Elizabeth A. Smith, next friend of Lucas Christopher Smith (hereinafter, Lucas), appeals the trial court's grant of summary judgment in favor of Defendant–Appellee AMLI Realty Company, d/b/a The Sycamore Apartments.

We reverse.

Appellant raises the following restated issue for our review:

whether the trial court erred in finding Lucas incurred the risk of his injury as a matter of law.

On or about August 20, 1988, Lucas, age nine, visited the Sycamore Apartments where his father lived. While outside playing, he was approached by Dana Faulkenberg, a child who lived in the area. Dana asked him to go to the apartment complex weight room so she could show him a trick she had learned. After receiving permission from his father, Lucas accompanied Dana to the weight room.

In the weight room was a "Universal" weight machine which had a "lat" exercise function. In this exercise, the user of the machine could pull down a lat bar attached by a cable and pulley to the weights. Dana took the pin to the "lat" exercise and set the weights at seventy pounds. With Lucas' help, she pulled the lat bar down, thereby raising the seventy pounds of weights, and straddled the bar so that when it was released by Lucas the bar raised up in the air and she was hanging by her knees. After hanging on the bar for awhile, Dana asked Lucas to help her down. Lucas placed his hands under the suspended stack and lifted it up, thereby causing the lat bar to go down. While Lucas was doing this, Dana jumped off the bar, causing the full seventy pounds to exert downward force. Lucas was unable to hold up the weights and their rapid descent resulted in his left hand being pinned between the descending weights and the weights in the bottom stack.

Lucas' "pinkie" finger was broken and another finger was crushed by the descending weights. In extricating his hand from

between the weights, Lucas also tore the skin off the bone on one finger. Appellant, who is Lucas' custodial parent, filed a complaint naming AMLI, the owner of the apartment complex, as the party responsible for Lucas' injuries. Appellant also filed a complaint sounding in strict product liability against the manufacturer of the weight machine.

AMLI filed a motion for summary judgment alleging it was entitled to judgment as a matter of law because 1) Lucas incurred the risk of the injury, and 2) the weight machine was not unreasonably dangerous. As evidence supporting its first contention, AMLI designated the following statements made by Lucas in a deposition:

Q. When you used this [machine] before August 20th, 1988, did you understand that when you let the bar go up these weights would come down?

A. Yes.

Q. When you used this before the day of the accident, did you understand that if you stuck your hand or your foot in between these weights *when they were coming down* you could possibly hurt yourself?

A. Yes.

(R. 372). (Emphasis supplied). As evidence supporting its second contention, AMLI designated an admission made by Appellant to the manufacturer of the machine that under product strict liability the weight machine was not "defective or unreasonably dangerous." (R. 380).

■ An evidentiary hearing was held on AMLI's motion on June 5, 1992. On June 16, 1992, the court granted AMLI's motion.[1]

■ Indiana Trial Rule 56(C) places the burden on the movant to establish the propriety of the entry of summary judgment. The moving party must make a prima facie showing that 1) there is no issue of material fact, and 2) the movant is entitled to judgment as a matter of law. If both requirements are met, the burden shifts to the nonmoving party to show specific facts indicating an issue of material fact. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101, *reh. denied.* In ruling on a motion for summary judgment, the trial court may not rely on briefs submitted by the parties, but must instead rely on the pleadings, depositions, answers to interrogatories, admissions on file, affidavits and testimony submitted and designated by the parties for the court's consideration. *Id.*

■ In determining whether summary judgment is appropriate, all facts asserted by the nonmoving party are accepted as true and any doubts are to be resolved in favor of the nonmoving party. *Northern Indiana Public Service Co. v. East Chicago Sanitary District* (1992), Ind.App., 590 N.E.2d 1067, 1071. Even if the facts are not in dispute, summary judgment is inappropriate if conflicting inferences could be drawn from those facts. *Newhouse v. Farmers National Bank* (1989), Ind.App., 532 N.E.2d 26, 28. Summary judgment is rarely appropriate in a negligence action. *Jump v. Bank of Versailles* (1992), Ind. App., 586 N.E.2d 873, 875.

■ The first issue before us is whether the trial court erred in finding Lucas incurred the risk of injury as a matter of law. Incurred risk can be found as a matter of law only if the evidence is without conflict and reveals the plaintiff 1) had actual knowledge of the specific risk and, 2) understood and appreciated the risk. *Maul-*

---

1. The trial court entered an "order" granting summary judgment on June 5, 1992. On June 10, 1992, however, the trial court ignored its June 5 "order" and ordered the cause to be tried on June 30, 1992. However, on June 16, 1992, the trial court sent a letter to counsel cancelling the trial date and designating the June 5 order as a "final appealable order." (R. 438). On the same day, the trial court issued a "judgment" granting summary judgment on the basis Lucas had incurred the risk as a matter of law. How-

ever, this "judgment" did not incorporate the June 5 order or make reference to the issues raised therein.

While the parties treat both writings as appealable judgments, we do not. Under IND. CODE 33–1–6–3, the trial court has the statutory power to change any judgment within ninety days after its rendition. The judgment rendered on June 16 was a change in the original judgment and is the final judgment appealed from in this case.

*ler v. City of Columbus* (1990), Ind.App., 552 N.E.2d 500, 502–503, *trans. denied.*

An issue similar to the one raised by AMLI was discussed by this court in *Baller v. Corle* (1986), Ind.App., 490 N.E.2d 382, *reh. denied, trans. denied,* wherein the plaintiff appealed a judgment by the trial court in favor of the defendant truck driver. The truck driven by the defendant had struck the plaintiff's seven year old boy after the boy ran into the road while at play. In reversing the judgment below, this court acknowledged that children seven or older may be found to have incurred the risk of a particular activity. 490 N.E.2d at 385. We went on to hold that in considering a child's contributory negligence, a child between seven and fourteen is required to exercise due care for his own safety under the circumstances and the care required is to be measured "by that ordinarily exercised under similar circumstances by children of the same age, knowledge, judgment, and experience." *Id.*

■ In the present case, the deposition testimony designated by AMLI shows only that Lucas understood he could be hurt by placing his hands between weights which were "coming down" and that letting go of the lat bar would cause the weights to descend. Nothing in the evidence relied on by AMLI indicates the weights were coming down when Lucas placed his hands under the suspended seventy pounds or that Lucas understood Dana was going to completely let go of the bar. A jury could infer a child of the same age, knowledge, judgment, and experience as Lucas would have thought he could hold the seventy pound stack up with or without Dana's assistance. From the circumstances, a jury could infer Lucas did not have sufficient knowledge and understanding to have incurred the risk of injury.

AMLI points us to language in *Mauller, supra,* indicating "knowledge of specific risk does not connote that the victim had prescience that the particular accident and injury which in fact occurred was going to occur." *Mauller,* 552 N.E.2d at 503 n. 3. This statement was made in holding an adult softball player, who knew the dirt around home plate was dug out, incurred the risk of injury from sliding into the plate even though she did not specifically contemplate catching her cleats on the underside of the plate. From this statement, AMLI posits Lucas incurred the risk by placing his hands under the suspended stack whether the stack was descending or not. AMLI's interpretation of *Mauller* fails to account for Lucas' age, knowledge, judgment, and experience. A child is not held to the same standard as an adult.

Because conflicting inferences can be made from the evidence designated by AMLI, it has failed to show the absence of a disputed material fact. Accordingly, the trial court erred in granting summary judgment on the issue.[2]

■ AMLI asserts the grant of summary judgment can be sustained as a matter of law on a ground other than incurred risk. In making its assertion, AMLI correctly notes:

> [O]n appellate review the trial court's judgment will be affirmed if sustainable on any theory or basis found in the [designated] record. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Fort Wayne Patrolman's Benevolent Association, Inc. v. City of Fort Wayne* (1980), Ind.App., 408 N.E.2d 1295. This rule applies to the grant of a motion for summary judgment, when, even though the grant of the motion is not sustainable on the theory reflected in the trial court's findings of fact and conclusions of law it is sustainable, on the basis of the substantive law of another theory.

*Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157.

■ AMLI specifically asserts Smith's claim is based solely on the theory of "attractive nuisance," a theory under which a defendant can be found liable for failure to protect a child or adult from the latent

2. With reference to the issue of incurred risk, we note the trial court failed to refer to comparative fault in its ruling.

dangers of a dangerous instrument. AMLI asserts the undisputed facts establish the danger was patent and the weight machine was not a dangerous instrument.

Assuming without deciding that Smith's claim is based solely on "attractive nuisance," we find AMLI is not entitled to summary judgment as a matter of law. We find conflicting inferences can be drawn from the evidence designated by AMLI as to whether the danger was obvious or the weight machine was a dangerous instrument under the circumstances.

■ AMLI's assertion on the obviousness of the danger is based on the same evidence cited to for its incurred risk argument. For the reasons given in our discussion on the incurred risk argument, we find the jury could infer a child of Lucas' age, knowledge, judgment, and experience would not have recognized the danger presented by attempting to hold the suspended weights while his friend endeavored to extricate herself from the bar.[3]

■ AMLI's assertion that the weight machine was not a dangerous instrument is based on Smith's admission that "there is no evidence that the accident was proximately caused by any defective or unreasonably dangerous condition of the exercise equipment." AMLI recognizes the admission was made as a response to a request for admissions pertaining to Smith's strict product liability claim against the manufacturer of the weight machine; however, AMLI fails to realize the difference between an "unreasonably dangerous condition" under the product liability statutes and a "dangerous instrument" for purposes of a negligence action.

Essential to a successful claim of strict product liability is proof of a defect in the instrument, which defect created a condition unreasonably dangerous to the user or consumer, and which proximately caused Plaintiff's injuries. *See* IC 33-1-1.5-3. For purposes of the product liability act, IC 33-1-1.5-2 defines "unreasonably dangerous" as "any situation in which the use of a product exposes the user or consumer to a risk of physical harm to the extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers." IC 33-1-1.5-2.5(a) further states "a product is in a defective condition under this chapter if, at the time it is conveyed by the seller to another party, it is in a condition ... that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption." Finally, IC 33-1-1.5-2.5(d) states "[a] product is not defective under this chapter if the product is incapable of being made safe for its reasonably expectable use, when manufactured, sold, handled, and packaged properly."

Under the product liability act then, an instrument may be "dangerous" as that term is commonly understood, yet not be "unreasonably dangerous" for purposes of strict liability under the act. For instance, a loaded gun may not be "unreasonably dangerous" for product liability purposes as long as it functions properly, i.e. it hurls a projectile at a target. However, the same gun left within the reach of children is a "dangerous instrument" and the person previously possessing the gun is negligent for making it easily accessible to those who cannot comprehend the full magnitude of its destructive capabilities.

---

3. One of the factors involved in evaluating a claim under the attractive nuisance theory is the utility to the possessor of maintaining the condition and the burden of eliminating the danger as compared with the risk to children of a particular condition or instrument. *See* RESTATEMENT (SECOND) OF TORTS § 339 (1965). The cases relied upon by AMLI in its brief dealt mostly with trespassing children who were injured on house construction sites or drowned in bodies of water. The only case not dealing with a trespasser concerned a child who lost his grip on a tree branch and sustained injuries as he struck the patio below. In all of these cases, the burden of eliminating the danger was very high when compared with the risk. In the present case the burden of eliminating the danger consists of installing a lock and providing tenants with keys, arguably a very light burden in comparison with the risk to the tenants' children.

In the present case, the weight machine was not "unreasonably dangerous" under the product liability act because it functioned properly as exercise equipment. However, because of the possibility of the weights smashing and tearing the fingers of children it may be considered a "dangerous instrument" in an attractive nuisance action.

The evidence designated by AMLI does not support a summary judgment in its favor. Therefore, the trial court was in error in granting such judgment.

Reversed for a trial on the merits.

CHEZEM and ROBERTSON, JJ., concur.