Patrick R. TAYLOR, Appellant,

v.

Josephine TAYLOR, Ronald R. Taylor, Bank One, Crawfordsville, NA, Personal Representative of the Estate of John Robert Taylor, deceased, and the Estate of John Robert Taylor, deceased, Appellees.

No. 32A04–9301–CV–18.

Court of Appeals of Indiana, Fourth District.

April 21, 1994.

James L. Lowry, Kendall, Wood, Lowry & Kessinger, Danville, Alan D. Hutchinson,

Parr Richey Obremskey & Morton, Lebanon, for appellant.

Terry E. Harris, Young, Harris & Harvey, Frank N. Howard, Crawfordsville, for appellees.

CHEZEM, Judge.

### Case Summary

Appellant, Patrick R. Taylor ("Patrick"), appeals the trial court's grant of partial summary judgment and determination of heirship. We affirm.

### Issues

Patrick presents four issues for our review, which we restate as follows:

I. Whether Josephine Taylor was entitled to partial summary judgment.

II. Whether the Waiver of Right to Take Against the Will was properly excluded from evidence.

III. Whether the Dead Man's Statute was properly applied to exclude testimony from Patrick's witnesses.

IV. Whether Patrick's testimony was subject to the attorney-client privilege.

### Facts and Procedural History

The facts most favorable to the judgment indicate that Josephine and Robert Taylor were married on December 31, 1986. At that time, Robert had a will which left his estate to Jean Roy Taylor, his former wife who died in 1985. The will provided that if Jean Roy Taylor preceded Robert in death, his estate would pass to his sons, Patrick and Ronald. Prior to their marriage, Robert and Josephine discussed provisions that would be made for her in the event of Robert's death.

In May of 1988, Josephine sought legal advice concerning bankruptcy from Robert's son Patrick, a practicing attorney. He advised her to file for bankruptcy. As part of the bankruptcy, Patrick prepared several documents for Josephine to sign. She signed a quitclaim deed for the marital residence and a truck, both of which were deeded to Patrick; she signed a spendthrift trust funded by the marital residence and the truck and which named Patrick as trustee; and she

signed a waiver of right to elect against Robert's will. Patrick filed the bankruptcy documents on May 19, 1988. In December of 1989, Patrick made the following notation on the spendthrift trust: "Dec. 8, 1989 I acknowledge the revocation of this instrument in its entirety." Patrick's signature was at the end of the notation. The waiver did not contain a notation of revocation.

In June of 1988, Robert and Josephine met with Herman Greenwood, a probate attorney, to devise a new will for Robert. Greenwood drafted a new will for Robert which made provisions for Josephine, but the will was never executed. Robert died on April 23, 1990.

Bank One, the personal representative of Robert's estate, admitted Robert's first will to probate on May 18, 1990. Patrick filed the waiver with the trial court on May 25, 1990. Josephine filed a petition of surviving spouse for statutory allowance and an election to take against the will on September 29, 1990. Bank One then filed a petition to determine heirship on October 18, 1990. Josephine filed a motion for partial summary judgment on July 23, 1991, alleging that no material issue existed as to the existence of a prenuptial agreement between Josephine and Robert. The trial court granted the partial summary judgment in Josephine's favor, finding as a matter of law that no oral prenuptial agreement existed.

Patrick then filed a petition to certify for interlocutory appeal. The trial court granted the petition, and this court denied the petition. On June 8 and 9, 1992, the trial court heard evidence on the remaining issues of the petition to determine heirship. The trial court found that Josephine did not waive her right to elect against Robert's will and ordered that she receive the $8,500 statutory survivor's allowance [1] and the statutory intestate share of Robert's estate for a subsequent childless spouse. Patrick appeals this decision.

### Discussion and Decision
#### I.

Patrick first contends the trial court erred in granting partial summary judgment in

favor of Josephine. He argues the designated evidence showed that there was a prenuptial agreement between Josephine and Robert.

■ On appeal from the grant or denial of a motion for summary judgment, the reviewing court uses the same standard in ascertaining the propriety of the summary judgment as the trial court does. *Ramon v. Glenroy Construction* (1993), Ind.App., 609 N.E.2d 1123, *trans. denied.* We will not reweigh the evidence and will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mutual Insurance* (1992), Ind.App., 604 N.E.2d 1190. The probative value of each piece of evidence is to be determined without setting weight or credibility. *Ramon,* 609 N.E.2d at 1127. Rational assertions of fact and reasonable inferences drawn therefrom are to be deemed true. *Id.* Summary judgment is appropriate when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Ind.Trial Rule 56(C).

The party moving for summary judgment bears the burden of establishing the propriety of summary judgment. *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 414. Once the movant shows that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, the burden shifts to the non-movant to show specific facts indicating an issue of material fact. *Smith v. AMLI Realty Company* (1993), Ind.App., 614 N.E.2d 618, 620.

■ On appeal, a trial court's grant of summary judgment is clothed with a presumption of validity. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434. The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Id.* Summary judgment will be affirmed if sustainable on any theory found in the designated record. *Smith,* 614 N.E.2d at 621.

---

1. Indiana Code § 29–1–4–1.

Patrick argues there was a genuine issue of material fact as to whether there was a valid prenuptial agreement. He believes there was evidence that Josephine and Robert had an oral prenuptial agreement and reduced that agreement to writing after their marriage.

Antenuptial agreements are to be construed according to principles applicable to the construction of contracts generally. *Rose v. Rose* (1988), Ind.App., 526 N.E.2d 231, 236, *trans. denied.* The statute of frauds, as set forth in I.C. § 32–2–1–1, states that no action shall be brought in the following cases:

> ... Third. To charge any person upon any agreement or promise made in consideration of marriage.... Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, exception however, leases not exceeding the term of three years.

*Beatty v. Beatty* (1990), Ind.App., 555 N.E.2d 184, 187, n. 6. This court has held that a contract made before marriage will be enforced, despite the writing requirement of the statute of frauds, if it is reduced to writing after marriage in accordance with the parties' previous agreement. *Id.* (citing *Koontz v. Koontz* (1927), 86 Ind.App. 206, 156 N.E. 524). In addition, the written agreement must expressly refer to the antenuptial agreement and affirmatively show that it is a memorandum of the oral antenuptial agreement. *Beatty,* 555 N.E.2d at 187.

The designated evidence shows that prior to their marriage, Josephine and Robert discussed that Robert would provide her with a house, a car, and an income upon his death. In her deposition, Josephine stated that they never agreed on specifics. There was no evidence presented to the trial court as to Josephine's part of the agreement. Based on this evidence, the trial court could have concluded as a matter of law that Josephine and Robert did not enter into a definite, oral prenuptial agreement. Even assuming, for the sake of argument, that a valid, oral pre-

nuptial agreement existed, it would not be enforceable unless reduced to writing.

Patrick argues that the "oral agreement" was reduced to writing after the marriage. He points to the waiver of right to elect against the will, signed by Josephine and a part of the pleadings, as evidence of the written memorialization. However, the designated materials do not support this contention. The waiver, taken as true for summary judgment purposes, reads as follows:

> Comes now Josephine Taylor, and now waives her right to take against the will of her husband, John Robert Taylor.
>
> Josephine Taylor has been advised that but for the instrument she could take against the will of John Robert Taylor and is aware that one now exists that does not provide for her.
>
> That in the event of John Robert Taylor makes [sic] other wills, the waiver will continue in force.
>
> /s/ _____
> Josephine Taylor

We do not find this document to be a written memorialization of the alleged prenuptial agreement. The document does not expressly refer to the prenuptial agreement and does not affirmatively show that it is a memorandum of the oral prenuptial agreement. As such, the alleged oral prenuptial agreement is unenforceable. *Id.;* I.C. § 32–2–1–1. The designated evidentiary materials do not show a genuine issue of material fact on the issue of a prenuptial agreement, and Josephine is entitled to judgment as a matter of law on this issue. The trial court properly granted partial summary judgment in favor of Josephine.

## II.

Patrick next contends the trial court committed error by excluding the Waiver of Right to Take Against Will during trial of the Petition to Determine Heirship. He argues the waiver should have been admitted under T.R. 9.2.

T.R. 9.2(B) states in pertinent part that:
> When a pleading is founded on a written instrument or a copy thereof is included in

or filed with the pleading, execution of such instrument, endorsement, or assignment shall be deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an affidavit filed therewith.

The Civil Code Study Commission Comments to T.R. 9.2(B) state that there should be no need for the pleader claiming rights upon the instrument to formally offer the instrument into evidence unless its execution is denied. *Bolen v. Mid–Continent Refrigerator Co.* (1980), Ind.App., 411 N.E.2d 1255, 1258, *reh'g denied,* (quoting 1 William F. Harvey, *Indiana Practice* 569 (West 1969)).

Patrick points to the trial court's finding of fact # 8 as proof that the waiver was excluded from evidence. Finding of fact # 8 states that "[t]he waiver was never offered in evidence for the proof of its contents, nor was any oral evidence given as to the content of the waiver; thus, the waiver and its contents are not in evidence in this cause, other than as a pleading matter." Looking only at this finding, it appears that the trial court erroneously excluded the waiver under T.R. 9.2(B). However, a view of the entire findings and conclusions of the trial court reveals otherwise.

Conclusion of law # 8 states that "[t]he waiver cannot be deemed in evidence because there is no proof in the records that ... (b) [the waiver] was entered into after full disclosure of the nature and extent of the right being waived and for fair consideration under the circumstances as required by IC 29–1–3.6, [sic] and it is therefore, invalid." The trial court's language in this conclusion of law reveals that the trial court considered the waiver as substantive evidence in order to rule on the waiver's validity. Although a better practice would have been to state that the waiver was admitted without evidence of its execution under T.R. 9.2(B), there was no harm. The trial court considered the waiver and ruled as though it had been admitted into evidence. Therefore, the waiver is deemed admitted into evidence. Patrick has failed to show that the trial court failed to

consider the waiver and has failed to show that he was prejudiced.

## III.

Patrick also contends that the trial court inappropriately applied the Dead Man's Statute during the trial.

The Indiana statutes known as the "Dead Man's" statutes read as follows:

> In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during a [sic] lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to the estate, shall not be a competent witness as to such matters against such estate: Provided, however, that in cases where a deposition of such decedent has been taken, or he has previously testified as to the matter, and his testimony or deposition can be used as evidence for such executor or administrator, such adverse party shall be a competent witness for himself, but only as to any matter embraced in such deposition or testimony.

I.C. § 34–1–14–6.

> In all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to, or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter, which occurred prior to the death of the ancestor.

I.C. § 34–1–14–7.

The purpose underlying the Dead Man's statutes is to preserve decedents' estates from spurious claims. *Matter of Estate of Neu* (1992), Ind.App., 588 N.E.2d 567, 569. The Dead Man's statutes guard against false testimony by requiring that, when the lips of one party to a transaction are closed by death, the lips of the other are closed by law. *Id.* In addition, the application of the statutes are limited to circumstances in which the decedent, if alive, could have refuted the

testimony of the surviving party. *Johnson v. Estate of Rayburn* (1992), Ind.App., 587 N.E.2d 182, 185. Where a claimant is prepared to testify to matters or transactions concerning the decedent, and not merely as to matters that occurred while the decedent was alive, the statutes render the witness incompetent to testify. *Id.*

The incompetency of a witness under the Dead Man's statutes may be waived, however. A party may waive the protection of the Dead Man's statutes and render a witness competent by calling the witness in the estate's behalf, by failing to object when the adverse party calls himself to testify on his own behalf, or by questioning the witness beyond the scope of direct examination. *Estate of Hann v. Hann* (1993), Ind.App., 614 N.E.2d 973, 977.

In the present case, the trial court ruled that Josephine, Patrick, Ronald Taylor, and Mary Taylor were incompetent to testify as to certain matters involving transactions concerning Robert during his lifetime. Where the trial court rules on the competency of a witness, the ruling will not be reversed absent a clear abuse of the trial court's discretion. *Estate of Rayburn,* 587 N.E.2d at 184. An abuse of discretion will be found when the ruling is against the logic and effect of the facts and circumstances before the trial court. *Id.*

Patrick does not argue that the Dead Man's statutes do not apply to the testimony of these witnesses. He argues instead that Josephine waived her objections to the incompetency of the witnesses by serving them with requests for admissions under T.R. 36 and submitting their depositions to the trial court pursuant to the motion for partial summary judgment under T.R. 56(C). He cites to *Dodd v. Estate of Yanan* (1992), Ind.App., 587 N.E.2d 1348, *vacated on other grounds,* for the proposition that serving a party with a request for admissions renders that party competent to testify as to all matters at trial. However, Patrick states the *Yanan* holding too broadly. In *Yanan,* we held that "when an estate requests an adverse party to admit statements or transactions that the party had with the decedent,

the estate has called upon such adverse party to testify concerning those statements or transactions. In such circumstances, we hold that the estate has waived the adverse party's incompetency under the Dead Man's statutes and cannot object to further testimony of that party." *Id.* at 1352. To clarify *Yanan,* we hold that the waiver of incompetency applies only to those matters in the request for admissions which are within the scope of the Dead Man's statutes. It does not amount to a waiver of incompetency as to admissions regarding any other area.

We first note that the trial court granted protective orders to the personal representative of the estate and Ronald Taylor, and did not require them to answer the admissions. With respect to the request for admissions sent to Patrick, we must decide whether the admissions requested by Josephine related to statements or transactions that Patrick had with Robert.

After examining Josephine's request for admissions, which included thirty-five (35) requests, we cannot say that she has called upon Patrick as a witness concerning any statements or transactions he may have had with Robert. The requests for admissions did not call for Patrick to admit to any statements or transactions that he had with Robert prior to Robert's death. Therefore, Josephine did not waive Patrick's incompetency as a witness by serving him with the request for admissions.

Patrick also argues that Josephine waived his incompetency as a witness, as well as Ronald Taylor's and Josephine's, by submitting each person's deposition for consideration by the trial court in the motion for partial summary judgment. Patrick fails to cite authority for this proposition.

Our supreme court has held that deposing an adverse party does not constitute a waiver of incompetency. *Id.* at 1351 (citing *Plummer v. Ulsh* (1967), 248 Ind. 462, 229 N.E.2d 799). Patrick argues that using a deposition in a motion for summary judgment places the deposition "in evidence" and results in the moving party waiving the deponent's incompetency.

In *Yanan*, we stated that matters revealed in a deposition are unlike facts admitted under T.R. 36. Facts admitted in a request for admissions are conclusively established for purposes of that action and the need to prove such facts at trial is eliminated. *Id.* at 1352. Summary judgment is not a substitute for trial in determining factual issues. It is a procedure whereby the trial court applies the law to the facts when no controversy exists as to the facts or the inferences to be drawn from them. *Board of Aviation Commissioners of St. Joseph v. Hestor* (1985), Ind.App., 473 N.E.2d 151. The trial judge may not weigh the evidence or judge the credibility of witnesses. Additionally, the trial court takes as true all facts alleged by the party opposing the motion. *Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 353, *reh'g denied, trans. denied.* The trial court decides only whether there is a material issue of fact, not what the facts are. As such, we do not find that a deposition, used for summary judgment purposes, can be deemed to be in evidence. Josephine did not waive the incompetency of the witnesses by using the depositions in her motion for partial summary judgment.

Further, Patrick argues that the trial court misapplied the Dead Man's statutes to Mary Taylor at trial. Mary Taylor is the wife of Ronald Taylor. Ronald Taylor is an heir to Robert and a party to this action. The trial court ruled Ronald incompetent to testify as to statements or transactions with Robert, pursuant to the Dead Man's statute. I.C. 34–1–14–9 states that "[w]hen the husband or wife is a party, and not a competent witness in his or her own behalf, the other shall also be excluded." Therefore, the trial court did not commit error by excluding Mary Taylor as a witness because of her husband's incompetency as a witness. Patrick has failed to show that the trial court clearly abused its discretion in applying the Dead Man's statutes to Josephine, Patrick, Ronald Taylor, and Mary Taylor.

## IV.

Finally, Patrick contends that the trial court improperly excluded a portion of his testimony as being subject to the attorney-client privilege.

■ Under Indiana law, a communication between an attorney and a client is privileged. Ind.Code § 34–1–14–5 states that "[t]he following persons shall not be competent witnesses: Third. Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." Ind.Professional Conduct Rule 1.6 also forbids attorneys to "reveal information relating to representation of a client unless the client consents after consultation." The attorney-client privilege belongs to the client, and the client alone may claim or waive it. *Gubitz v. State* (1977), 172 Ind.App. 343, 360 N.E.2d 259.

Patrick argues that the trial court erroneously applied the attorney-client privilege to four questions posed to him by his attorney concerning Josephine's signing of the waiver. The record reveals that Josephine sought legal advice from Patrick concerning a bankruptcy and that she signed the waiver and other documents in his office pursuant to his filing of the bankruptcy for her.

■ The first question to which Josephine invoked the attorney-client privilege was: "Did you have a discussion with Josephine Taylor prior to her signing that document?" The trial court sustained the objection based on the attorney-client privilege and the Dead Man's statute, which was the other basis for counsel's objection. Because the question asked Patrick to reveal a confidential communication between himself and Josephine which was made to him during the course of his professional business, the trial court properly excluded the testimony under the attorney-client privilege.

■ The second question to which Josephine invoked the attorney-client privilege was: "Did you have occasion to show Mrs. Taylor Exhibit # 1 [a chart showing intestate succession] prior to her signing a Waiver of Election To Take Against The Will?" The trial court sustained the objection based on the attorney-client privilege and the Dead Man's statute. Because the question asked Patrick to reveal the substance of a confiden-

tial communication between himself and Josephine, the trial court properly excluded the testimony.

The third question to which Josephine invoked the attorney-client privilege was: "[A]fter Mrs. Taylor signed the Waiver of the Right to Elect Against the Will heretofore introduced as Personal Representative's Exhibit Three, was a copy of the same delivered to her and or her husband, the decedent?" Again, the trial court sustained the objection on the basis of the attorney-client privilege and the Dead Man's statute. The attorney-client privilege does not apply to this testimony as it would not reveal a confidential communication between Patrick and Josephine. However, the testimony would be properly excluded under the Dead Man's Statute because it called for Patrick to testify to matters or transactions concerning Robert, the decedent. Because Robert could have refuted this testimony, if alive, the trial court properly excluded the testimony.

The last question to which Josephine invoked the attorney-client privilege was: "Do you know the consideration which was given by Robert Taylor to Josephine Taylor in exchange for her execution of the Waiver of the Right to Elect Against the Will heretofore introduced as Personal Representative's Exhibit # 3?" The trial court also sustained the objection on the basis of the attorney-client privilege and the Dead Man's statute. Although Patrick's offer to. prove did not state how he would have become aware of the consideration, a logical explanation would be that he found out from Josephine or Robert. Because the Waiver was signed at Patrick's office during his representation of Josephine, anything Josephine said to Patrick regarding the waiver was a privileged communication. In addition, if the source of this testimony was from Robert, it would be excluded under the Dead Man's statute. Patrick would have been testifying to matters or transactions concerning the decedent, which is prohibited by the Dead Man's statute. The trial court properly excluded Patrick's testimony concerning this question.

Patrick also argues that Josephine waived her right to invoke the attorney-client privilege because she testified in her deposition that she sought legal advice from Patrick concerning bankruptcy and disclosed some of this advice. However, Patrick does not cite the portions of Josephine's deposition which he alleges to be a waiver of her right to claim the privilege. As such, he has waived this argument. Ind.Appellate Rule 8.3(A)(7). Notwithstanding the waiver, Patrick's argument must fail.

Our supreme court has held that "where the client testifies as to a specific communication or offers his attorney's testimony as to that communication, he thereby waives the privilege against disclosure of the whole of the communication." *Liberty Mutual Insurance Co. v. Blakesley* (1991), Ind. App., 568 N.E.2d 1052, 1059. Patrick argues that any testimony by Josephine in her deposition concerning advice given to her by Patrick constitutes a waiver and allows him to testify as to all of their communications. We do not agree. The record reveals that Josephine did not testify in her own behalf at trial and did not offer her deposition as evidence at trial. Furthermore, in her deposition, Josephine did not testify as to any specific communication with Patrick. She also did not offer Patrick's testimony into evidence at the trial. Therefore, Josephine did not waive the attorney-client privilege.

Finally, Patrick argues that Josephine waived the privilege by alleging that Patrick violated the Rules of Professional conduct. Again, we note that Patrick does not direct our attention to the portion of the record wherein Josephine made this allegation.

When the professional integrity of an attorney is directly attacked by a client, that attorney has a right to defend his conduct. *Logston v. State* (1977), 266 Ind. 395, 363 N.E.2d 975, 977. In the present case, Josephine did not directly attack the professional integrity of Patrick. She did not sue him for malpractice or bring any other suit against him on the basis of his legal representation of her. Where an attorney is defending allegations of incompetent representation, he is relieved from his obligation of confidentiality and is free to respond to the

assertions of incompetence. *Zordani v. State* (1978), 175 Ind.App. 297, 371 N.E.2d 396. Patrick has not shown that his representation of Josephine was directly under attack by her. Additionally, Patrick has failed to show that he was prejudiced by the trial court applying the attorney-client privilege to the four questions at trial. Therefore, the trial court properly applied the attorney-client privilege to Patrick's testimony.

The trial court's judgment is affirmed.

RILEY, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

I concur in the decision affirming the judgment of the trial court. I write separately, however, to voice my disagreement with *Dodd v. Yanan* (1992) 4th Dist. Ind.App., 587 N.E.2d 1348, even as modified by the majority opinion here.

The holding in *Yanan, supra,* was and, as here modified, is that where a party requests admissions from an adverse party pursuant to Ind.Trial Rule 36, the requesting party is, in effect, eliciting testimony from the adverse party, thereby waiving any objection to that party's competency under the Dead Man's Statute. This holding was appropriately criticized as follows:

> "[T]he use of discovery under Rule 36 is not the same as calling the adverse party as a witness. It can be only in a distended metaphorical sense. Pretrial is not trial, just as oil is not water, and the effect of this kind of decision is to remove this kind of discovery in almost every case in which the Dead Man's Statute is initially applicable." William F. Harvey, rules, rulings for the trial lawyer 36 Res Gestae 118 (1992).

As the majority correctly notes, however, and without regard to *Yanan,* Josephine did not waive the incompetency of the witnesses by resort to T.R. 36.