Mark BOETSMA and Michael Boetsma, As Co–Personal Representatives of the Estate Of Terry Boetsma, Appellants–Petitioners,

v.

Marie BOETSMA, Appellee–Respondent.

No. 71A03–0107–CV–253.

Court of Appeals of Indiana.

May 30, 2002.

&#9919;&#8799;31(2)

———

Robert J. Palmer, May, Oberfell & Lorber, Mario Zappia, Zappia & Zappia, South Bend, IN, Attorneys for Appellants.

James A. Masters, Nemeth, Feeney, Masters, P.C., South Bend, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Mark Boetsma and Michael Boetsma, Co–Personal Representatives of the Estate of Terry Boetsma, appeal the trial court's ruling that denied their objection to Marie Boetsma's election to take against Terry's will. Co–Personal Representatives raise several issues on appeal, which we consolidate and restate as: whether Marie waived her statutory rights to a spousal allowance and opportunity to elect to take against the will of her deceased husband when she executed an antenuptial agreement that expressly waived those rights.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Terry and Marie lived together for approximately nine years, and during that time "[e]verything was separate," except that they shared in the maintenance and expenses of the home in which they resided. *Appellants' Appendix* at 109–10. In early 2000, while Terry was a patient in the hospital, Terry and Marie discussed having wills prepared for each of them, and Terry indicated his desire for an ante-

nuptial agreement. Thereafter, Marie contacted attorney Michael Murphy and asked him to draft an antenuptial agreement and wills for her and Terry. On February 8, 2000, Murphy met with Marie, Terry, and Terry's son, Mark Boetsma, at the hospital to discuss the matter. Murphy prepared the documents and mailed them to Terry and Marie's home on February 9, 2000. On February 14, 2000, in Terry's hospital room, Terry and Marie executed the antenuptial agreement in the presence of counsel and a witness.[1] Minutes later, they each executed their respective wills. They married that same day.

Terry died on May 20, 2000. On June 15, 2000, his sons Mark and Michael Boetsma filed a petition for probate of their father's will, and the court appointed them Co–Personal Representatives of the estate. On November 16, 2000, Marie, as a surviving spouse, filed a spousal election to take against Terry's will. Thereafter, Co–Personal Representatives filed an objection, asserting that Marie had waived her right to take against the will by executing the antenuptial agreement. Following a hearing, the court denied the objection and found that Marie did not waive her right to take against the will nor her right to any spousal allowance. Co–Personal Representatives now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

 The parties dispute the appropriate standard of review to be applied in this appeal. Co–Personal Representatives maintain that the trial court's order constitutes sua sponte findings of fact and conclusions of law, for which the appellate court applies the established two-tiered standard of review:

---

1. Murphy was out of town on a preplanned vacation, and another attorney from his law firm was present at the hospital in his absence.

First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

*Estate of Skalka v. Skalka,* 751 N.E.2d 769, 771 (Ind.Ct.App.2001) (quoting *Bronnenberg v. Estate of Bronnenberg,* 709 N.E.2d 330, 333 (Ind.Ct.App.1999)).

 On the other hand, Marie asserts that Co–Personal Representatives appeal from a negative judgment, i.e. the denial of their objection to her election to take against the will. In an appeal from a negative judgment, the appellate court will reverse only if the evidence viewed most favorably to the trial court leads incontrovertibly to a conclusion contrary to the one reached below. *Beatty v. Beatty,* 555 N.E.2d 184, 186 (Ind.Ct.App.1990). After reviewing the record before us, we conclude neither party's suggested standard of review is appropriate.

 The trial court's order, entitled Memorandum of Law, cites case law upon which it relies for its decision, generally summarizes certain hearing testimony, and denies the Co–Personal Representatives' objection to Marie's election to take against the will. *Appellants' Appendix* at 5. It does not purport to enter findings of fact or conclusions of law; thus, the standard of review proposed by Co–Personal Representatives is inapplicable.

That proposed by Marie is likewise inapposite. Prior to the start of the hearing on Co–Personal Representatives' objection, the parties discussed on the record the matter of who carried the burden of proof. The parties agreed, and the court approved, that the initial burden was on Co–Personal Representatives to prove that an antenuptial agreement existed, and the burden then shifted to Marie to prove that the agreement was invalid. *Id.* at 37–39. *See also Matuga v. Matuga,* 600 N.E.2d 138, 141 (Ind.Ct.App.1992), *trans. denied* (citing *Matter of Estate of Palamara,* 513 N.E.2d 1223, 1226 (Ind.Ct. App.1987) (party who petitions to invalidate antenuptial contract generally bears burden of establishing invalidity by preponderance of evidence)). Here, Co–Personal Representatives established the existence of an antenuptial agreement, the matter on which they carried the burden of proof. Thus, they are not appealing from a negative judgment. Rather, they are appealing an unfavorable ruling, which determined that Marie successfully established the invalidity of the antenuptial agreement.

 Accordingly, we view the trial court's decision as a general judgment. A general judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Bedree v. Bedree,* 747 N.E.2d 1192, 1197 (Ind.Ct.App.2001), *trans. denied. See also Foman v. Moss,* 681 N.E.2d 1113, 1116 (Ind.Ct.App.1997) (In reviewing general judgments issued in a civil case tried to the bench, we ask only whether there is substantial evidence of probative value supporting the judgment on any legal theory.). In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to

be drawn therefrom. *Bedree,* 747 N.E.2d at 1197; *Foman,* 681 N.E.2d at 1116.

## II. Nature of Antenuptial Agreements

Antenuptial agreements are legal contracts by which parties entering into a marriage relationship attempt to settle the interest of each party in the property of the other during the course of the marriage and upon its termination by death or other means. *Hunsberger v. Hunsberger,* 653 N.E.2d 118, 125 (Ind.Ct. App.1995), *trans. denied* (1996) (citing *In re Marriage of Boren,* 475 N.E.2d 690, 693 (Ind.1985)); *Beatty,* 555 N.E.2d at 187. The interpretation of a contract is primarily a question of law for the court, even if the instrument contains an ambiguity needing resolution. *Bressler v. Bressler,* 601 N.E.2d 392, 395 (Ind.Ct.App.1992). Thus, on appeal, our standard of review is essentially the same as that employed by the trial court. *Id.* Antenuptial agreements are to be construed according to principles applicable to the construction of contracts generally. *Id.* (citing *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct. App.1991), *trans. denied* (1992)). If the language of the instrument is unambiguous, the intent of the parties must be determined from its four corners. *Id.*

Antenuptial agreements are favored by the law as promoting domestic happiness and adjusting property questions that otherwise would often be the source of litigation. *Hunsberger,* 653 N.E.2d at 125. Antenuptial agreements, so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable, are valid and binding. *Id.* at 125; *Palamara,* 513 N.E.2d at 1229.

## III. Statutory Rights of Surviving Spouse and Waiver Thereof

In Indiana, surviving spouses hold certain statutory rights upon the death of their spouse. One such right is known as a spousal allowance and is found at IC 29–1–4–1, which, when Terry died in 2000, entitled a surviving spouse to an allowance of fifteen thousand dollars from their deceased spouse's estate.[2] A surviving spouse may also elect to take against the provisions of the deceased spouse's will under IC 29–1–3–1(a), which provides in pertinent part:

When a married individual dies testate as to any part of the individual's estate, the surviving spouse is entitled to take against the will under the limitations and conditions stated in this chapter.... [I]f the surviving spouse is a second or other subsequent spouse who did not at any time have children by the decedent and the decedent left surviving a child or children or the descendants of a child or children by a previous spouse, the surviving second or subsequent childless spouse shall upon such election take one-third (1/3) of the net personal estate of the testator plus a life estate in one-third (1/3) of the lands of the testator.

Those statutory rights, however, are not inviolate and may be waived.

IC 29–1–2–13 provides for the waiver of the expectancy of a surviving spouse's allowance. It states in pertinent part:

The intestate share or other expectancy to which the spouse ... is entitled may be waived at any time by a written contract, agreement or waiver signed by the party waiving such share of expectancy. The promise of marriage, in the absence of fraud, is sufficient consider-

---

**2.** The legislature amended the statute in 2001 and increased the allowance to twenty-five thousand dollars.

ation in the case of an agreement made before marriage. In all other cases such contract, an agreement or waiver is binding upon the parties to the agreement if executed after a full disclosure of the nature and extent of such right[.]

 IC 29–1–3–6 governs a surviving spouse's waiver of the right to take against the will. Its language is similar to IC 29–1–2–13, above, and states in pertinent part:

The right of election of a surviving spouse ... may be waived before or after marriage by a written contract, agreement or waiver, signed by the party waiving the right of election, after full disclosure of the nature and extent of such right ....

An antenuptial agreement may suffice to waive the statutory election. *Russell v. Walz*, 458 N.E.2d 1172, 1179 (Ind.Ct.App. 1984) (citing *Estate of Gillilan v. Estate of Gillilan*, 406 N.E.2d 981, 989–91 (Ind.Ct. App.1980)). *See also Beatty*, 555 N.E.2d at 188 (quoting *Russell*, 458 N.E.2d at 1180) (valid antenuptial agreements are enforceable to raise claims or bar claims waived by the agreement).

Here, the antenuptial agreement provided, in relevant part:

### RECITALS

WHEREAS, the Parties desire and intend to define their respective rights in the property of the other, both during the marriage relationship and after its termination, and to avoid such interests which, except for the operation of this Agreement, each might acquire in the property of the other as incidents of their marriage relationship; and

WHEREAS, each party desires that his or her respective property, both real and personal, shall pass to his or her respective children or designated heirs;

IT IS THEREFORE AGREED:

. . . .

### WAIVER OF ELECTION AND EXPECTANCY

3. Each Party hereby renounces, releases, and remises all rights as surviving spouse, heir, distributee, survivor, or next of kin, whether by common law or by statute, state or federal, now in effect or hereafter enacted, or otherwise, to all claim and interest in the property and estate of the other Party, including but not limited to, rights to dower, curtesy, or statutory substitute therefore (whether inchoate or otherwise), election against will, distributive share, or life insurance.

. . . .

### REPRESENTATION BY INDEPENDENT COUNSEL

11. The Parties do hereby admit and acknowledge that each has been advised to be represented by independent counsel, and that Michael C. Murphy represents the Wife; and that the Agreement has been read by the Parties and that they understand its meaning and legal consequences.

*Appellants' Appendix* at 13–15.

 Marie asserts that despite the express language in the agreement indicating waiver of all rights to the other's property, whether existing then or in the future, whether created by statute or otherwise, she did not know what rights she was waiving. While Murphy did not specifically discuss with Marie the existence of the spousal allowance under IC 29–1–4–1, the elective distributive share under IC 29–1–3–1, or the monetary value of either, he did apprise Marie of the consequences of executing the antenuptial agreement:

I explained to Marie by signing the prenuptial agreement her assets would remain her's [sic], Mr. Boetsma's would

remain his, and unless they did something such as name one another in a will, create joint property, make gifts or something similar, that they had no rights at anytime, either now or in the future, against the property of the other. *Id.* at 51. On cross-examination, he repeated the explanation he had given to Marie:

No, it was more than a general discussion. It was a statement that I have already testified to that once the prenuptial was signed that she could not expect anything from Mr. Boetsma either currently or in the future unless he did certain things, such as, will, joint ownership, gift, et cetera.

*Id.* at 60. Nevertheless, Marie asserts on appeal that the antenuptial agreement is invalid to waive her statutory rights because the specific nature and extent of the rights she was waiving were never disclosed to her.

In support of her position, Marie relies upon *Bohnke v. Estate of Bohnke,* 454 N.E.2d 446 (Ind.Ct.App.1983), in which a widow brought an action against her deceased husband's estate for rescission of an instrument in which she waived her statutory survivor's allowance and her right to take against her husband's will. The parties, Frank and Candace, were both in their eighties, met in a nursing home, and married. Before marrying, they had orally agreed that their estates would pass to their respective children and that neither would make any claim on the other's estate; such discussions were held more than once in the presence of Frank's family. After Frank died, Frank's son asked Candace to sign an instrument entitled "Waiver of Right to Elect to Take Against Will," the language of which stated:

I have been fully informed as to my rights in the estate of my deceased husband, Frank E. Bohnke, and as to the

provisions of I.C. 29–1–3–1 and my right to survivor's allowances as provided in I.C. 29–1–4–1.

*Id.* at 449. The son did not explain the Waiver's contents or implications to Candace, who read and signed the Waiver later that day. Subsequently, Candace sought advice from an attorney, who filed a petition to revoke Candace's waiver. The trial court denied her petition. This court reversed, finding Candace's waiver of her statutory rights was not based on a full disclosure of the rights waived. Although the text of the waiver mentions the relevant statutory provisions, the reviewing court concluded that the "allusion to Candace's statutory rights hardly constitutes a disclosure of the nature of those rights." *Id. See also Estate of Calcutt v. Calcutt,* 576 N.E.2d 1288, 1292 (Ind.Ct. App.1991), *trans. denied* (1992) (following *Bohnke,* court held surviving husband did not waive statutory right to survivor's allowance where antenuptial agreement made no provision for disposition of property after death, did not mention survivor's allowance, and no evidence existed that surviving spouse received any disclosure of such right); *Estate of Edington v. Edington,* 489 N.E.2d 612, 615–16 (Ind.Ct.App. 1986) (citing *Bohnke,* court held that surviving wife did not receive full disclosure of her statutory rights under either alleged antenuptial agreement, the existence of which was not supported by credible evidence, or in wills that each executed that left all property to that party's respective children).

We find *Bohnke* distinguishable from the present case in several respects. Here, the plain language of the antenuptial agreement stated that Marie was waiving her right "to all claim and interest in the property and estate of the other Party[.]" *Appellants' Appendix* at 14. It did not merely reference code sections or the term spousal allowance, as did the Waiver in

*Bohnke,* but instead expressly stated that she was waiving her right to receive anything whatsoever from her husband's estate. Additionally, in the present case Marie contacted the attorney to prepare the document, had the document in her possession for several days prior to its execution, and was advised by the attorney that by signing the agreement she was waiving all rights to Terry's property both now and in the future. In contrast, the widow in *Bohnke* was contacted by the decedent's son, who asked her to execute the Waiver, but did not explain to her the consequences of signing the document. Nor did the widow in *Bohnke* have the opportunity to receive legal advice, as she signed the waiver the same day it was presented to her. Lastly, we observe that Marie's testimony evidenced an understanding that by signing the agreement she was waiving all rights in Terry's property, other than the house in which they had resided, which Terry devised to her in his will. *Appellants' Appendix* at 103, 105–06, 108.

We believe that this court's subsequent decision in *Beatty* is more applicable and more persuasive than *Bohnke.* In *Beatty,* a husband claimed a widower's allowance in his deceased wife's estate. The couple had signed an antenuptial agreement whereby they had each waived their rights to participate in the estate of the other. The agreement stated in pertinent part:

> Upon the death of either of the parties hereunto ... neither party shall have any claim, right, title or interest in or to the estate of the other. It is the intention of the parties that each waives his or her respective right to share or elect to participate in the estate of the other, to any and all support, maintenance or other rights flowing from the marriage, and to every other interest of whatsoever kind or nature to which he or she might subsequently become entitled in and to the estate of the other.

*Beatty,* 555 N.E.2d at 186. The trial court upheld the husband's claim, concluding that husband could not have waived the statutory allowance because at the time the agreement was made the statutory right to a widower's allowance did not yet exist. On appeal, we reversed and held that the language of the antenuptial agreement waived the husband's statutory right to a survivor's allowance, even if the right arose after the agreement was executed. This court observed that although husband was not "aware" of the survivor's allowance, because the statute permitting it to a widower did not yet exist, the husband "was aware that he was waiving 'every other interest of whatsoever kind or nature to which he ... might subsequently become entitled' to in [his wife's] estate." *Id.* at 188. We believe that Marie likewise was aware that by executing the agreement she was waiving any and all rights to any interest in her husband's estate.

In reaching the decision that husband had waived his right to the statutory allowance, the *Beatty* court also considered the parties' intent based upon the language of the agreement, which provided:

> Neither of us is acting under any compulsion or restraint but is motivated by a good faith desire to maintain our independent estates for the sole enjoyment of our respective descendants.

*Id.* at 188. The court inferred from this language that the parties intended to waive all rights to share in the estate of the other in order to preserve their independent estates for the sole enjoyment of their respective children. *Id.* Marie and Terry expressed the same intent in their agreement, which stated, "[E]ach Party desires that his or her respective property, both real and personal, shall pass to his or her respective children or designated heirs." *Appellants' Appendix* at 13.

■ "'Antenuptial agreements are favored by the law and will be liberally construed to effect, so far as possible, the parties' intentions.'" *Beatty,* 555 N.E.2d at 188 (quoting *Russell,* 458 N.E.2d at 1179). Considering the language of the antenuptial agreement, and specifically the broad language waiving all rights to the other party's estate and the parties' expressed intent to pass all separate property to each party's heirs, we conclude that she waived her statutory rights when she executed the antenuptial agreement. To the extent that *Bohnke* and its progeny require a contrary result or are otherwise inconsistent with this opinion, we decline to follow those cases.

Reversed.

SULLIVAN, J., and ROBB, J., concur.