**Shane DAUGHERTY, Appellant–Respondent,**

v.

**Sherry DAUGHERTY, Appellee–Petitioner.**

**No. 34A04–0402–CV–62.**

Court of Appeals of Indiana.

Nov. 4, 2004.

Katherine J. Noel, Kokomo, IN, Attorney for Appellant.

Donald J. Bolinger, Kokomo, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Respondent–Appellant Shane Daugherty (Husband) appeals the trial court's division of property in the dissolution of the marriage between Husband and Petitioner–Appellee Sherry Daugherty (Wife).

We reverse and remand for action consistent with this opinion.

Husband presents two issues which we consolidate and restate as one: whether the trial court erred by distributing the property of the parties contrary to the parties' prenuptial agreement.

The parties were married on October 6, 2001. Prior to their nuptials, they signed a prenuptial agreement (Agreement) on September 28, 2001. The trial court found, and neither party challenges this finding, that the Agreement is valid and enforceable. Following a hearing, the trial court entered findings of fact and conclusions of law with regard to the parties' property. Husband now appeals.

■ Ind. Trial Rule 52 encompasses special findings of fact and conclusions of law by the court. The purpose of the trial court making special findings is to provide the parties and the reviewing court with the theory upon which the lower court decided the case in order that the parties' right of review might be effectively preserved. *Town and Country Ford, Inc. v. Busch,* 709 N.E.2d 1030, 1032 (Ind.Ct.App. 1999).

■ T.R. 52(A) provides, in part:

Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury (except as provided in Rule 39[D] ) shall find the facts specially and state its conclusions thereon.

When a party has requested the trial court to formulate specific findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *St. John Town Bd. v. Lambert,* 725 N.E.2d 507, 517 (Ind. Ct.App.2000). Nevertheless, before affirming on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn therefrom. *Id.* at 518.

■ In reviewing the judgment of the trial court, we must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The findings and judgment will not be set aside unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when it is unsupported by the findings of fact. *Id.* In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* Moreover, we will not reweigh the evidence or assess witness credibility. *Id.*

Husband contends that the trial court erred by distributing property of the parties contrary to the provisions of the Agreement. Specifically, Husband argues that the trial court erred in defining the term "separate property" contrary to the use of that term in the Agreement. This erroneous definition led the trial court to improperly distribute certain items of the parties' property.

■ "Antenuptial agreements are legal contracts by which parties entering into a marriage relationship attempt to settle the interest of each party in the property of the other during the course of the marriage and upon its termination by death or other means." *Boetsma v. Boetsma,* 768 N.E.2d 1016, 1020 (Ind.Ct.App. 2002), *reh'g denied, trans. denied,* 783 N.E.2d 699. Thus, antenuptial agreements are to be construed according to the general principles of contract law. *Id.* Accordingly, the court must apply the provisions of antenuptial agreements according to their plain and ordinary meaning. *In Re the Marriage of Conner,* 713 N.E.2d 883, 886 (Ind.Ct.App.1999). If the language of the agreement is unambiguous,

the intent of the parties must be determined from its four corners. *Boetsma,* 768 N.E.2d at 1020. Further, the court must read all of the provisions of the agreement as a whole to arrive at an interpretation which harmonizes the agreement's words and phrases and gives effect to the parties' intentions as established at the time they entered the agreement. *Pardieck v. Pardieck,* 676 N.E.2d 359, 363 (Ind.Ct.App.1997), *trans. denied,* 683 N.E.2d 595. Antenuptial agreements are favored by the law and will be liberally construed to realize the parties' intentions. *Boetsma,* 768 N.E.2d at 1024.

In the present case, Husband challenges the trial court's Findings of Fact 10 and 11 as the basis for his argument that the trial court erred in defining the term "separate property" by misstating the provisions of the Agreement in its Findings. The trial court's Findings are as follows:

10. After hearing evidence and argument on the issue, this court found by its order entered September 15, 2003, that the premarital agreement was valid and enforceable. Per the terms of the agreement, any and all items of property acquired by each party prior to their marriage on October 6, 2001 is awarded to the party having acquired the same, without claim by the other party.

11. The agreement defines "separate property" as all real and personal property owned by each party at the time of the agreement's execution, including the assets listed in the agreement's schedules A and B; the income, rents, royalties, profits and appreciation from said assets; and all assets received by gift, inheritance, bequest, and distribution of income from trusts created by a person other than the other party. The agreement further provides that in the division of assets and liabilities of their marital community in the event of a marriage dissolution, the separate property of each party shall not be taken into account.

Appellant's Appendix at 9–10. However, paragraph C of the "Recitals" section of the Agreement states:

C. Husband and Wife desire to enter into an agreement to preserve the character of property each party owned as his or her separate property prior to their marriage, *to preserve the separate property each may hereafter acquire as his or her separate property and to avoid, to the extent practicable, combining or commingling such property to the end that each party, if it is his or her desire to do so, may continue to manage his or her separate property without any interest of the community attaching to such Property.*

Appellant's Appendix at 61 (emphasis added). In addition, paragraph 1, entitled "Husband's Separate Property," and paragraph 2, entitled "Wife's Separate Property," state as follows:

1. *HUSBAND'S SEPARATE PROPERTY.* All of the real and personal property, beneficial interests, powers of appointment and revocation, and all other property rights and interests of every kind and nature whatsoever, now owned by husband *and any separate property which he may hereafter acquire or become entitled to, including but not limited to* (a) those assets listed in Schedule A and the income, rents, royalties, profits and appreciation from them, and (b) all assets received by gift, inheritance, bequest, and distribution of income or principal from trusts created by a person other than husband. These assets shall remain as his separate property throughout his marriage to wife subject entirely to his individual control and management, to hold, sell, convey, gift, lease, encumber, and dispose of as if he

were not married, and wife shall not acquire by virtue of such marriage for herself or her creditors, heirs, executors, administrators or assigns, any interest in such property or in the use or control of it or in the rents, royalties, income, profits and appreciation arising from it.

2. *WIFE'S SEPARATE PROPERTY.* All of the real and personal property, beneficial interests, powers of appointment and revocation, and all other property rights and interests of every kind and nature whatsoever, now owned by wife, *and any separate property which she may hereafter acquire or become entitled to, including but not limited to* (a) those assets listed in Schedule B and the income, rents, royalties, profits and appreciation from them, and (b) all assets received by gift, inheritance, bequest, and distribution of income or principal from trusts created by a person other than wife. These assets shall remain as wife's separate property throughout her marriage to husband subject entirely to her individual control and management, to hold, sell, convey, gift, lease, encumber, and dispose of as if she were not married, and husband shall not acquire by virtue of such marriage for himself or his creditors, heirs, executors, administrators or assigns, any interest in such property or in the use or control of it or in the rents, royalties, income, profits and appreciation arising from it.

Appellant's Appendix at 62 (emphasis added).

■ As indicated by paragraphs C, 1, and 2, above, the evidence, specifically the Agreement, does not support the trial court's findings. Particularly, the court's Findings 10 and 11 are incomplete in that they only describe the parties' separate property as that property which the parties owned prior to the marriage. By attributing this meaning to the parties' definition of separate property, the court ignores the remainder of the language in paragraphs C, 1, and 2 of the Agreement. Thus, Findings 10 and 11 are not supported by the evidence.

Husband additionally asserts that because the trial court failed to accurately define the term "separate property" as it is defined in the Agreement, certain items of property were improperly awarded to Wife. Specifically, the court awarded to Wife the 2003 Dodge Neon vehicle, a tax relief check, and a judgment in her favor in the amount of $20,920.69. Moreover, the court ordered Husband to pay the debt on the Key Bank Visa credit card.

■ The trial court made specific findings with regard to three of these four items. Findings of Fact 20, 35 and 39 distribute the Dodge Neon, the tax relief money, and the debt on the Key Bank Visa, respectively. Finding of Fact 20 states:

> 20. At separation, the parties owned a 2003 Dodge Neon, which was acquired during the marriage, and has a value of $10,970.00. This vehicle is awarded to the Wife, subject to the debt against it.

Appellant's Appendix at 11. The evidence at the hearing on this matter discloses that the parties maintained separate funds and bank accounts throughout their marriage. The Dodge Neon vehicle was purchased by Husband with his separate funds in April 2003 just prior to Wife filing her petition for dissolution in May 2003. The vehicle is titled in Husband's name only, and he has made all of the payments on the vehicle. Based upon this evidence, as well as the portion of the Agreement which states that any separate property which Husband or Wife may acquire during the marriage shall remain his or her separate property, we conclude that Finding of Fact 20 is not

supported by the evidence and therefore cannot stand.

■ With regard to the tax relief check, Finding of Fact 35 states as follows:

35. At separation, the parties were entitled to the proceeds of a joint tax relief check from the Internal Revenue Service in the sum of $800.00. The proceeds of this check are awarded to the Wife.

Appellant's Appendix at 14. The transcript reveals that this was a tax relief check in the amount of $800 which related to a tax return on which both parties each claimed one child. Moreover, the evidence shows that Husband was the primary wage earner throughout the marriage. He was employed at Chrysler with a yearly salary in excess of $93,000, while Wife testified she earned approximately $100 per week. The evidence does not sustain the conclusion that the entire tax relief check should be awarded to Wife. Thus, we cannot say that the evidence supports this finding.

■ Next, Finding of Fact 39 states:

39. At separation, the parties had a debt on an account with Key Bank—Visa having a balance of $4,932.83. Although the account was originally established for the primary purpose of being a source of credit for the Wife's Mary Kay business, it was also utilized for the purchase of household items and living expenses. The Husband shall be responsible for the debt due on the account for the charges accrued up to the date of separation May 8, 2003. Any charges to the account made by the Wife after the date of separation shall be her responsibility. The account should be changed to show that the Wife is no longer an authorized user of the account.

Appellant's Appendix at 15. However, this finding by the trial court runs afoul of the Agreement, particularly paragraphs D and 3, which state:

D. Husband and Wife also desire to enter into an agreement to protect the separate property which each owns or may hereafter acquire from the separate debts, obligations or liabilities, whether fixed or contingent, which the other may have incurred prior to their marriage and from the debts, obligations and liabilities, whether fixed or contingent, either party has incurred or may incur for the benefit of, or in connection with, his or her separate property after the date of their marriage.

Appellant's Appendix at 61.

3. *SEPARATE DEBTS, OBLIGATIONS AND LIABILITIES.* Each party further agrees that each shall be and remain solely responsible for his or her separate debts, obligations and liabilities, whether fixed or contingent, and whether incurred prior to or after their marriage. Each party shall indemnify and hold the other harmless from all liabilities now owned by him or her or hereafter incurred or arising out of his or her separate property.

Appellant's Appendix at 62. As stated previously, the parties maintained separate bank accounts and kept their funds separate during their cohabitation as well as throughout their marriage. Moreover, the evidence with regard to the Key Bank Visa merely serves to buttress the Agreement and the intent of the parties to maintain their separate property, accounts and debts. The parties' testimony demonstrates that Wife had filed bankruptcy and had no credit. During the marriage she wanted to start a cosmetics business, so Husband co-signed on the Key Bank Visa credit card in order that Wife could establish credit and begin her business venture. It was set up as a business credit card with an account name of "Sherry's Cosmetics." Tr. at 76. Further, Wife testi-

fied that at the time the account was established, she told Husband that she would be responsible for the payments on the account. Additionally, the credit limit for which Husband co-signed was $2,500.00, but the limit on the account was increased to $5,000.00 without Husband's authorization or knowledge. Thus, neither the evidence, nor the Agreement, support the court's finding that Husband should pay the debt to Key Bank Visa. Rather, the Visa card debt was a debt that was incurred separately by Sherry, was maintained separately by Sherry, and was by all accounts to be paid separately by Sherry.

Finally, Husband claims error with the trial court's award of a judgment in favor of Wife in the amount of $20,920.69. The division of assets in a dissolution action rests within the discretion of the trial court, and we will reverse the court's determination only if that discretion is abused. *Antonacopulos v. Antonacopulos*, 753 N.E.2d 759, 760 (Ind.Ct. App.2001). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Here, although the trial court states that it entered this award in order "[t]o achieve a fair and equitable division," such an award is directly contrary to the parties' Agreement. Appellant's Appendix at 20. By signing the Agreement, the parties specifically agreed that it would operate as a waiver to their right to "a just and equitable division" of their "separate and community property." Appellant's Appendix at 63. In addition, paragraphs C and D of the Agreement, set out previously in this opinion, refer to the parties' desire to preserve the character of their separate property, whether owned at the time the Agreement was signed or acquired later, to avoid combining or com-

mingling of the property, and to protect their separate property, whether owned at the time the Agreement was signed or acquired later, from the debts and obligations of the other party.

Further, paragraph E of the Agreement reinforces the wishes of the parties as follows:

E. Husband and Wife accept the terms of this Agreement in lieu of and in full discharge, settlement and satisfaction of all rights and interests which each might otherwise acquire in the estate and separate property of the other as a result of or incident to their marriage.

Appellant's Appendix at 61. Moreover, paragraphs 1 and 2 of the Agreement, as set out previously in this opinion, state the parties' intentions to maintain Husband's property as his separate property and Wife's property as her separate property, whether owned at the time the Agreement was signed or acquired after marriage.

In addition to the clear evidence in the Agreement of the parties' intentions to keep their property separate, the testimonial evidence exhibits this desire of the parties as well. For example, both parties testified that throughout their marriage they maintained separate bank accounts. Further, Wife stated that Husband purchased a Dodge van, which he then sold to her for her to drive. Husband also testified that the vehicles, except the Dodge van, were titled only in his name, that he made all the payments on them, and that Wife rarely drove them.

The court should not re-write the contract of the parties; rather, we must liberally construe the prenuptial agreement to effectuate the intent of the parties when they signed it. *Ryan v. Ryan*, 659 N.E.2d 1088, 1095 (Ind.Ct.App.1995), *trans. denied.* As is clear from the Agreement, the parties in the present case intended and

desired for their property to remain separate. Merely because one party now prefers a different outcome, we will not re-write the agreement.

Based on the foregoing discussion and authorities, we conclude that the trial court's Findings of Fact 20, 35 and 39 were not supported by the evidence, and that the award of the judgment in favor of Wife in the amount of $20,920.69 was an abuse of the discretion of the trial court.

Reversed and remanded for action consistent with this opinion.

ROBB, J., and BAKER, J., concur.