## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 11 2020, 7:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donna J. Jameson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Kelley Y. Baldwin
Yeager Good & Baldwin, P.A.
Shelbyville, Indiana

Isaac G.W. Trolinder
Shelbyville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Fletcher, Jr.,
*Appellant-Respondent,*

v.

Hillery Fletcher,
*Appellee-Petitioner.*

February 11, 2020

Court of Appeals Case No.
19A-DC-84

Appeal from the Shelby Circuit Court

The Honorable Trent Meltzer, Judge

The Honorable Jennifer Kinsley, Magistrate

Trial Court Cause No.
73C01-1710-DC-201

**Friedlander, Senior Judge.**

[1] In this dissolution action, the trial court issued its findings of fact, conclusions thereon, judgment, and decree of dissolution that dissolved the parties' marriage, valued the parties' assets, and divided the marital estate pursuant to an antenuptial agreement. To effect an equal distribution of the parties' marital assets, the trial court entered a judgment in the amount of $43,961.00 against James Fletcher, Jr. ("Husband") and in favor of Hillery Fletcher ("Wife"). The court also directed Husband to pay $5,000.00 of Wife's attorney fees. Husband appeals, presenting one issue for our review, that is, whether the trial court erred in interpreting the parties' antenuptial agreement.[1]

We affirm.

[2] The facts of this case are as follows. Husband and Wife were married on June 15, 2013. During the marriage, Wife worked part-time as a technician at a veterinary clinic, and Husband was employed by a business owned by his family.

[3] Prior to the parties' wedding day, Husband had an antenuptial agreement (hereinafter, "Agreement") prepared by his attorney. The parties entered into the Agreement on May 17, 2013. The Agreement provides in relevant part as follows:

---

[1] The dissolution action also involved matters of child custody and support, which are not a part of this appeal.

[Husband] desires to marry [Wife] and release all rights which he might or could have, by reason of the marriage, in the property or income which [Wife] now owns, may hereinafter acquire, or in her estate upon her death.

[Wife] desires to marry [Husband] and release all rights which she might or could have, by reason of the marriage, in the property or income which [Husband] now owns, may hereinafter acquire, or in his estate upon his death.

. . .

Both parties shall retain the title and all rights to manage, control, and the possession of, and to [sic] the estate and income which they now own, or which they may acquire by any means, including, but not limited to gift, inheritance or purchase whether it be realty, personalty, or mixed, together with all increase or addition thereto, as though such party had remained single and unmarried, entirely free and unmolested by the other party. . . .

. . .

Nothing in this agreement shall preclude the parties from holding any property jointly. All joint property will be divided so that each party receives one-half (½) of the property or proceeds of property owned in equal shares, or receive the appropriate ownership share, if owned differently. If any party has contributed to the jointly held property with his or her Separate Property, he or she shall be credited with the value of that property before the Joint Property, or the proceeds thereof, are divided. Specifically, [Wife] shall retain the first $7,000.00 from the sale or disposition of any joint property as representative of the monies she paid prior to marriage as down payment on the residence that is to become the marital residence.

Appellant's App. Vol. II, pp. 45-46.

[4]     The Agreement does not contain a definition for the term "Separate Property." The Agreement does, however, include two exhibits that provided an overview

of the parties' respective estates at the time the Agreement was executed. Exhibit 9 lists Wife's estate as including "A. $7,000 down payment on [the marital residence]"; Exhibit 10 lists Husband's estate as including "A. 15% interest in Fletcher Chrysler Products, Inc. [and] B. 15% interest in Fletcher-Thompson, LLC." *Id.* at 60-61.

[5] On October 13, 2017, Wife filed a petition for dissolution of the marriage, requesting custody of the children and an equitable division of the marital property. At the time Wife filed her petition, the parties had three children.[2] On December 11, 2017, Husband filed a cross-petition for dissolution, requesting custody of the children and a fair and equitable division of the marital estate in accordance with the parties' Agreement. While neither party contested the validity of the Agreement, the parties disagreed as to how the Agreement should be interpreted.

[6] On December 18, 2017, the trial court approved the parties' preliminary agreement regarding property and child-related issues. On April 20, 2018, the parties were ordered to mediation. The parties participated in an unsuccessful mediation on April 24, 2018.

[7] A significant part of the contention between the parties involved their differing interpretation of the language of the Agreement. Thus, on August 8, 2018,

---

[2] Husband had two children prior to his marriage to Wife. During the parties' marriage, Wife adopted the two children.

Wife filed a request for the trial court to interpret the parties' Agreement. The disagreement between the parties lay specifically with the following sentence in the Agreement: "If any party has contributed to the jointly held property with his or her Separate Property, he or she shall be credited with the value of that property before the Joint Property, or the proceeds thereof, are divided." *Id.* at 46. In her request filed with the trial court, Wife explained the parties' differing opinions regarding the interpretation of the Agreement as follows:

> 4. As shown by the foregoing, if either party contributed to the jointly held property with his or her "Separate Property", the party who contributed his/her "Separate Property" is entitled to a credit for the value of such "Separate Property." The parties differ with respect to the meaning of the term "Separate Property." Wife contends each party's "Separate Property" is specifically identified in the exhibits attached to the Antenuptial Agreement. Husband contends "Separate Property" includes any property titled in a party's individual name and/or earned by a party during the course of the parties' marriage, including Husband's wages earned during the parties' marriage and deposited into the parties' joint bank account.

> 5. The evidence required to effectuate a division of the parties' marital estate pursuant to the terms of the Antenuptial Agreement is dependent upon the interpretation of the Antenuptial Agreement and the meaning of the term of "Separate Property." If the term "Separate Property" includes all income earned by Husband and deposited into the parties' joint bank account, it will be necessary to rely upon thousands of documents in order to "trace" the disposition of Husband's wages and the acquisition of various assets. If the term "Separate Property" includes only those assets identified in the exhibits attached to the Antenuptial Agreement, [that is, the $7,000.00 Wife contributed to the down payment for the marital residence and Husband's 15% interest in entities owned by his family,] the

amount of evidence necessary to effectuate a division of the
parties' marital estate is drastically reduced.

*Id.* at 73.

[8]     On October 17, 2018, a hearing was held on Wife's request. During the
hearing, Wife entered into evidence Exhibit A, which contained her proposed
division of the marital estate per her interpretation of the Agreement. Per
Exhibit A, in relevant part, Husband would receive the marital residence and
funds contained in three separate bank accounts, while Wife would receive the
funds contained in a Salin Bank account, as well as the $7,000.00 she
contributed to the down payment for the marital residence.

[9]     On October 22, 2018, the trial court issued its order in the matter. The court
ruled "in favor of [Wife] and deem[ed] the items listed on Exhibit A[, that is,
the marital residence and the four bank accounts,] to be joint property divided
equally among the parties in the event of the dissolution of the marriage." *Id.* at
16. The court determined that Wife "shall receive a credit of $7000 as
specifically set out in the [Agreement]." *Id.* The Court deferred the
determination of the value of the property and bank accounts listed in Exhibit A
until the final hearing.

[10]    The final hearing, on the issues of the division of the marital estate and child
support, was held on October 26, 2018. On December 11, 2018, the trial court
issued its divorce decree, accompanied by extensive findings of fact and
conclusions thereon. The court dissolved the parties' marriage; ordered an

equal distribution of the parties' jointly-held assets, after Wife received credit in the amount of $7,000.00; and detailed the distribution of the marital property. To achieve an equal distribution, the trial court entered a $43,961.00 judgment against Husband. The trial court also required him to pay "the total amount of $5,000 to Wife's counsel, . . . as partial attorney fees."[3] *Id.* at 29. The December 11, 2018 order incorporated the trial court's October 22, 2018 order that interpreted the parties' Agreement.

[11] On December 14, 2018, the trial court held a hearing on custody and parenting-time matters and issued an order on January 3, 2019, that resolved all issues pending before the trial court. This appeal followed.

[12] Neither party argues that the Agreement is invalid or ambiguous. Instead, Husband contends that the trial court erred when it "erroneously interpreted the parties' [Agreement]." Appellant's Br. p. 4. The specific language in the Agreement that is at issue on appeal reads as follows:

> *If any party has contributed to the jointly held property with his or her Separate Property, he or she shall be credited with the value of that property before the Joint Property, or the proceeds thereof, are divided.* Specifically, [Wife] shall retain the first $7,000.00 from the sale or disposition of any joint property as representative of the monies she paid prior to marriage as down payment on the residence that is to become the marital residence.

---

[3] We commend the trial court on the thoroughness and clarity of its findings of fact and conclusions thereon, which greatly facilitated appellate review.

Appellant's App. Vol. II, p. 46 (emphasis added).

[13] Husband's argument, essentially, is that the trial court erred in interpreting the term "separate property," and that this erroneous interpretation led the trial court to improperly determine the parties' rights to certain joint marital property. According to Husband, had the trial court correctly interpreted the term, and given the term its plain and ordinary meaning, the trial court would have determined that the "parties' separate property consisted of more than the property listed in Exhibits 9 and 10 of the Agreement[, that is, respectively, the $7,000.00 Wife contributed to the down payment for the marital residence and Husband's 15% interest in entities owned by his family]." Appellant's Br. p. 9. Per Husband, the trial court would have determined, instead, that the parties should be "credited for the value of his or her *separate contribution*" to the joint marital property, that is, "either party's income earned during their marriage[,]" "before the division of the joint property", and that Husband should have received credit for income he contributed to the parties' joint bank accounts during the marriage. *Id.* at 10, 12 (emphasis added).

[14] Wife maintains that the trial court correctly interpreted the Agreement because neither party's income *during* the marriage is eligible for the separate property credit. She argues that no error occurred on the part of the trial court because, per the "specific language of the [A]greement, [Husband] is not entitled to receive a credit for income he contributed to the joint property during the marriage" because "the specific language of the [A]greement limits the Separate

Property Credit to contributions up to the time of the signing of the . . . Agreement." Appellee's Br. pp. 6, 7. Alternatively, Wife argues that neither parties' marital income falls under the separate property credit because income is not property.

[15] The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), and therefore, we apply a two-tiered standard of review for clear error; that is, first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Mysliwy v. Mysliwy*, 953 N.E.2d 1072 (Ind. Ct. App. 2011) (citations omitted), *trans. denied.* We do not reweigh the evidence but consider the evidence favorable to the judgment. *Id.* Findings of fact are clearly erroneous when the record contains no facts to support them, and a judgment is clearly erroneous if no evidence supports the findings, the findings fail to support the judgment, or if the trial court applies an incorrect legal standard. *Bowyer v. Ind. Dep't of Nat. Res.*, 944 N.E.2d 972 (Ind. Ct. App. 2011). Although we review findings under the clearly erroneous standard, we review conclusions of law de novo. *Id.* at 983.

[16] "Antenuptial agreements are legal contracts by which parties entering into a marriage relationship attempt to settle the interest of each party in the property of the other during the course of the marriage and upon its termination by death or other means." *Boetsma v. Boetsma*, 768 N.E.2d 1016, 1020 (Ind. Ct. App. 2002), *trans. denied*. Thus, antenuptial agreements are to be construed according to the general principles of contract law. *Id.* Accordingly, the court must apply

the provisions of antenuptial agreements according to their plain and ordinary meaning. *In Re the Marriage of Conner*, 713 N.E.2d 883 (Ind. Ct. App. 1999). If the language of the agreement is unambiguous, the intent of the parties must be determined from its four corners. *Boetsma*, 768 N.E.2d at 1020. Further, the court must read all of the provisions of the agreement as a whole to arrive at an interpretation which harmonizes the agreement's words and phrases and gives effect to the parties' intentions as established at the time they entered the agreement. *Pardieck v. Pardieck*, 676 N.E.2d 359 (Ind. Ct. App. 1997), *trans. denied*. Antenuptial agreements are favored by the law and will be liberally construed to realize the parties' intentions. *Boetsma*, 768 N.E.2d at 1024.

[17] In *In re Marriage of Boren*, 475 N.E.2d 690, 695-96 (Ind. 1985), our Supreme Court, quoting *In re Marriage of Stokes*, 43 Colo. App. 461, 608 P.2d 824 (1979), set forth the distinction between antenuptial and post-nuptial settlement agreements as follows:

> "Antenuptial agreements are intended as a means of preserving the status quo as to property interests existing before marriage; in contrast, separation agreements resolve claims as to property interests which have matured because of the marriage status. In further contrast to separation agreements, antenuptial agreements are executory in nature until a marriage actually occurs; they have as their principal consideration the marriage itself; and they do not dispose of, or divide, any property, but rather fix the rights of the parties with respect to the specified property, regardless of the duration of the marriage."

608 P.2d at 828. We now turn to the case before us.

[18] Although the term "separate property" was not defined in the Agreement, the parties agree that the assets listed in Exhibits 9 and 10 are the parties' separate property and are not subject to division. In addition, Wife testified at the October 17, 2018 hearing that she acknowledged that Husband had other separate property in his individual name, including life insurance policies and a retirement account, that was not listed in Exhibit 10. Regarding the four bank accounts, however, Wife testified that the accounts were jointly held, and that the parties "both put money in from [sic] our incomes in both of those . . . in all of those accounts." Tr. p. 13.

[19] There was no indication in the Agreement that the term "separate property" included income that the parties contributed to the joint bank accounts during the marriage. The Agreement did not specifically provide for how income deposited into joint bank accounts would be characterized.

[20] The trial court ultimately determined that the joint marital property consisted of the four bank accounts, as well as the marital residence. Husband points to no evidence that calls this determination into question. He also points to no evidence that indicates the trial court erred in determining that he was not entitled to a credit for any income he contributed to the accounts. Furthermore, Husband presented no evidence at either the October 17, 2018 hearing or the final hearing that the income he and Wife deposited into the bank accounts was to retain its separate character. *See e.g.*, *Kemp v. Kemp*, 485 N.E.2d 663, 667 (Ind. Ct. App. 1985) citing *Klingberg v. Klingberg*, 68 Ill. App. 3d 513, 386 N.E.2d 517 (1979) (property which is separate at its inception may lose its

separate characteristic if it is not kept segregated; money brought into a marriage as separate property becomes marital property when placed in a joint bank account with the other spouse); *cf. Daugherty v. Daugherty*, 816 N.E.2d 1180, 1187 (Ind. Ct. App. 2004) (where this Court found "clear evidence" in the prenuptial agreement and in the testimonial evidence of the parties' intentions to keep their property separate). To the contrary, Husband's argument amounts to an assertion that the trial court should have embraced his interpretation of the Agreement instead of Wife's.

[21] Based upon the foregoing, we conclude that the trial court properly read and harmonized the various provisions of the Agreement in determining how the term "separate property" should be applied. The trial court did not err in interpreting the Agreement, and it was reasonable for the trial court to determine that the income the parties' deposited into the bank accounts was joint marital property, and that Husband was not entitled to a credit for the funds he deposited.

[22] Husband also argues that the trial court

> committed reversable [sic] error when it found the parties' Agreement was valid and ordered the marital estate to be divided equally among the parties in the event of the dissolution of the marriage, without allowing [Husband] to put on evidence as to what credit he should be attributed for his contribution of separate property toward the joint marital property as provided for in the [Agreement].

Appellant's Br. p. 7. Contrary to Husband's assertion, however, we find no evidence that the trial court prevented him from presenting evidence as to any credit he might have been owed for his contribution of property to the joint marital property. No error occurred here.

[23] To the extent that Husband is arguing that but for the trial court's October 22, 2018 order (that ruled upon Wife's request to interpret the Agreement), he would have introduced evidence of his separate property that was comingled with the joint marital property during the marriage, we can find no evidence to support this assertion.

[24] Based on the foregoing, we conclude that the trial court did not err in interpreting the parties' Agreement, and the court did not prevent Husband from introducing evidence during the hearings. The judgment of the trial court is affirmed.

[25] Judgment affirmed.

Vaidik, J., and Crone, J., concur.